IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:  ASBESTOS LITIGATION: | ) | |
| | ) | |
| FREDERICK SEITZ and MARY | ) | |
| LOUISE SEITZ, his wife | ) | |
| | ) | |
| Plaintiffs | ) | C.A. No. 08-353 |
| | ) | |
| -vs.- | ) | |
| | ) | |
| ADEL WIGGINS GROUP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANT NORTHROP GRUMMAN CORPORATION' S MOTION
FOR STAY OF PROCEEDINGS AND FOR EXTENSION OF TIME
TO ANSWER OR OTHERWISE PLEAD**

Defendant Northrop Grumman Corporation ("Northrop Grumman"), through its attorneys, respectfully moves this Honorable Court to stay all proceedings in this case pending a ruling by the Judicial Panel on Multidistrict Litigation on transfer of the above-captioned matter to the Eastern District of Pennsylvania as part of the *In re Asbestos Products Liability Litigation*, Docket No. MDL-875 ("MDL-875.  Northrop Grumman has concurrently asked the Judicial Panel on Multidistrict Litigation to transfer the action herein to the Eastern District of Pennsylvania as part of MDL-875.  As set forth more fully in the accompanying supporting Memorandum, transfer of this matter to MDL-875 is likely because this matter concerns allegations of asbestos-related disease or injury stemming from exposure to asbestos products and inhalation of the products' asbestos fibers and because it shares many other common procedural and substantive issues with the actions pending in MDL-875.

Accordingly, principles of expediency, efficiency, comity, and avoidance of the waste of this Court's time, energy, and resources, dictate that all proceedings before this Court in this matter should be stayed pending transfer to MDL-875. Similarly, and pursuant to Federal Rule of Civil Procedure 6(b), Northrop Grumman respectfully moves this Court for an order extending the time Northrop Grumman has to answer or otherwise plead so that pretrial motions and answers related to the Complaint can be filed with and according to the established procedures of MDL-875.

**WHEREFORE**, for the reasons stated above and more fully set forth in the accompanying Memorandum, Defendant Northrop Grumman Corporation respectfully moves this Court for an order staying all proceedings in this case pending a decision on transfer to MDL-875 from the MDL Panel.

ELZUFON AUSTIN REARDON TARLOV & MONDELL, P.A.

/s/ *Penelope B. O'Connell*

_____
Penelope B. O'Connell (DE #4898)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
(302) 428-3181

Nancy Shane Rappaport (DE #3428)
DLA PIPER US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3357

Attorneys for Defendant
Northrop Grumman Corporation

Date: June 12, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE:  ASBESTOS LITIGATION: | ) | |
| | ) | |
| FREDERICK SEITZ and MARY | ) | |
| LOUISE SEITZ, his wife | ) | |
| | ) | |
| Plaintiffs | ) | C.A. No.  08-353 |
| | ) | |
| -vs.- | ) | |
| | ) | |
| ADEL WIGGINS GROUP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MEMORANDUM IN SUPPORT OF DEFENDANT NORTHROP GRUMMAN
CORPORATION'S MOTION FOR STAY OF PROCEEDINGS AND FOR
EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD**

Defendant Northrop Grumman Corporation ("Northrop Grumman ") has asked the

Judicial Panel on Multidistrict Litigation ("MDL Panel") to transfer this action to the Eastern

District of Pennsylvania as part of *In re Asbestos Products Liability Litigation*, Docket No.

MDL-875 ("MDL-875").   (*See* Notice of Tag Along Action attached as **Exhibit 1**).

Accordingly, Northrop Grumman  respectfully moves that this Court stay all proceedings in this

case pending the imminent transfer of this action to MDL-875, for the reasons discussed below.

Additionally, pursuant to Federal Rule of Civil Procedure 6(b), Northrop Grumman  moves this

Court for an extension of time to answer or otherwise plead until seven (7) days after this case is

transferred to MDL-875.

## I. **INTRODUCTION**

Because many of the procedural and substantive issues in this action are identical to

issues pending before the Honorable Judge James T. Giles of the United States District Court for

the Eastern District of Pennsylvania in MDL-875, Northrop Grumman expects that the MDL

Panel shortly will issue a transfer order mandating that this action become part of MDL-875 as a

tag-along case.  Given that the facts and issues between this action and MDL-875 are virtually

identical, any ruling made by this Court in the interim period before transfer risks duplication

and inconsistency with the parallel multidistrict proceeding that has been operating efficiently for

the last fifteen (15) years.  Therefore, as numerous judges of this and other courts have held, a

stay of proceedings here pending transfer would be most appropriate.

## II.  BACKGROUND OF MDL-875: *IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION*

The background of the asbestos-related litigation pending in MDL-875 is now well-

established.  In the early-1990's, members of the bench and trial bar agreed that asbestos-related

litigation "reached a magnitude, not contemplated . . . , that threatens the administration of

justice and . . . requires a new streamlined approach." *In re Asbestos Prods. Liab. Litig. (VI)*, 771

F. Supp. 415, 418 (J.P.M.L. 1991).  In recognition that individual cases could no longer be

administered effectively by individual judges in separate federal cases, the MDL Panel

concluded that "centralization of all federal asbestos personal injury/wrongful death actions, in

the words of 28 U.S.C. § 1407(a), 'will be for the convenience of the parties and witnesses and

will promote the just and efficient conduct of such actions.'" *Id.*  Specifically, pursuant to 28

U.S.C. § 1407, on July 29, 1991, the MDL Panel transferred to MDL-875 over 20,000 actions

that involved common questions of fact relating to injuries or wrongful death allegedly caused by

exposure to asbestos or asbestos-containing products.  *Id.*  The actions were transferred to the

Eastern District of Pennsylvania before the Honorable Charles R. Weiner for coordinated or

consolidated pretrial proceedings.

Since that time, barring exceptional circumstances not present here, any cases pending in federal courts for claims of injury or wrongful death from asbestos are transferred to the Eastern District of Pennsylvania for pretrial proceedings before Judge Giles, the judge presiding over MDL-875, as a matter of course. Indeed, according to the Judicial Panel's docket page, there are currently 34,383 actions pending in MDL-875, and there have been 112,229 total actions transferred to MDL-875 since 1991. (*See* J.P.M.L. Docket attached as **Exhibit 2**).

### III. THE *SEITZ* ACTION WILL BE TRANSFERRED TO MDL-875 AS A TAG-ALONG ACTION

Northrop Grumman filed a Notice of Tag-Along Action with the MDL Panel informing it that this action is a tag-along action to MDL-875 pursuant to R.J.P.M.L 7.2(i), 7.3(a), 7.4 and 7.5(e) (*See* **Exhibit 1**). The MDL Panel may now enter a conditional transfer order transferring this action to MDL-875. Almost without exception, the MDL Panel issues transfer orders in asbestos-litigation when "the Panel finds that [the tag-along actions] involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring in that district" because transfer will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Asbestos Prods. Liab. Litig. (VI)*, 170 F. Supp. 2d 1348 (J.P.M.L. 2001).

Indeed, numerous asbestos cases have been transferred without exception, underscoring the fact that transfer of a federal action for asbestos-related injury or wrongful death to MDL-875 is almost automatic regardless of the objection. *See, e.g., In re Asbestos Prods. Liab. Litig. (No. VI)*, 170 F. Supp. 2d 1348 (granting transfer over objection that cases involving punitive damages should be excluded from MDL-875); *In re Asbestos Prods. Liab. Litig. (No. VI)*, Nos. 875, C02-0194PJH, 2002 WL 1128268 (J.P.M.L. Apr. 3, 2002) (granting conditional transfer

order and noting that since the formation of MDL-875, more than 72,201 actions have been

transferred to MDL-875) (attached as **Exhibit 3**); *In re Asbestos Prods. Liab. Litig. (No. VI)*,

Nos. 875, 3:01-540, 3:10-1627, 1:00-1454, 2001 WL 1042562 (J.P.M.L. Aug. 29, 2001)

(ordering transfer of cases to MDL-875 over objections that unique facts warranted exclusion

from the MDL proceedings) (attached as **Exhibit 4**); *In re Asbestos Prods. Liab. Litig. (No. VI)*,

No. 875, 1996 WL 143826 (J.P.M.L. Feb. 16, 1996) (same) (attached as **Exhibit 5**).  Indeed, the

MDL Panel has rejected oppositions to transfer regardless of the pendency of motions or other

matters before the transferor court, the uniqueness of a party's status, the type of defendant, the

docket condition of any specific federal district, the stage of pretrial proceedings, the presence of

unique claims or additional claims not related to asbestos-related injury or death, and/or the

unanimity of opposition to transfer by the parties to an action.  *In re Asbestos Prods. Liab. Litig.

(No. VI)*, 170 F. Supp. 2d at 1349.

The policy favoring the transfers of asbestos cases is widely accepted.  The MDL Panel

also has found that transfer is necessary to avoid duplication of effort with unnecessary expenses

by the parties, witnesses, and their counsel, to prevent inconsistent decisions in all pending

federal personal injury or wrongful death asbestos actions not yet in trial, and for the just and

efficient conduct of the litigation.   *In re Asbestos Prods. Liab. Litig.*, 771 F. Supp. at 421-22;

and *In re Asbestos Prods. Liab. Litig.*, 1996 WL 143826, at * 1 (*See* **Exhibit 5**).

> It is against this backdrop that the Panel's decision enrolled in this
> litigation must be understood.  First of all, our decision to order
> transfer is not unmindful of the fact that the impact of asbestos
> litigation varies from district to district, and that in some courts
> asbestos personal injury actions are being resolved in a fashion
> indistinguishable from other civil actions.  It is not surprising,
> therefore, that parties and courts involved in such actions might
> urge that inclusion of their actions in multidistrict proceedings is
> inappropriate. The Panel, however, must weigh the interest of all
> of the plaintiffs and all of the defendants, and must consider

> multiple litigation as a whole in the light of the purposes of the law.

*In re Asbestos Prods. Liab. Litig.*, 771 F. Supp. at 420.

*Seitz* is related to the other actions in MDL-875 in a number of respects. First and most importantly, the Seitzes' causes of action are based on the same factual predicates as other actions in MDL-875—namely, whether Frederick and Mary Louise Seitz suffered asbestos-related injuries stemming from exposure to asbestos from products and premises or inhalation of asbestos fibers. Second, based on these allegations, the Seitzes assert the same causes of action as the plaintiffs in MDL-875, including negligence and strict liability. Third, like the plaintiffs in MDL-875, the Seitzes seek to recover compensatory and punitive damages for asbestos-related disease or injury. Under these circumstances, permitting Judge Giles (with his learned experience in handling thousands of such cases) to decide such issues would promote judicial efficiency and avoid duplicative litigation efforts and the potential for inconsistent results. *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *In re Air Crash Disaster at Fla. Everglades*, 368 F. Supp. 812 (J.P.M.L. 1973).

Until the MDL Panel transfers this action to the Eastern District of Pennsylvania, this Court should follow the lead of numerous other judges in this and other courts and grant Northrop Grumman's request for a stay of all proceedings.

## IV.  A STAY IS APPROPRIATE UNDER THE CIRCUMSTANCES OF THIS CASE

The power to stay is well recognized. It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). *See also 7 B.C. Wright, A. Miller and M. Kane*, FEDERAL PRACTICE AND PROCEDURE § 1792, at 293 (2d ed. 1986) ("[W]hen similar actions, either class or individual, are proceeding before several

courts, one or more of the tribunals may stay the proceeding before it pending the outcome of the other action."); and MANUAL FOR COMPLEX LITIGATION § 31.14 3d ed. 1995 ("[I]n appropriate cases, a judge may order an action stayed pending resolution of a related case in a federal court.").

A stay is particularly appropriate in the context of a multidistrict proceeding. Cases asserting redundant claims may be transferred by the MDL Panel to a single district for coordinated pretrial proceedings. 28 U.S.C. § 1407(a). Coordination furthers judicial economy and eliminates the potential for conflicting pretrial rulings. *See, e.g., In re New York City Mun. Sec. Litig.*, 572 F.2d 49, 51-52 (2d Cir. 1978); *In re Air Crash Disaster off Long Island, N.Y.*, 965 F. Supp. 5, 7 (S.D.N.Y. 1997). These benefits would be lost if individual cases proceeded pending the MDL Panel's transfer of the cases to a single judge. Indeed, "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are curbed." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). Relying on similar reasons, numerous courts throughout the country have entered a stay of all proceedings pending a decision on transfer to an MDL proceeding. *See, e.g.*, *Aikins v. Microsoft Corp.*, Civ. A. No. 00-0242, 2000 WL 310391 (E.D. La. Mar. 24, 2000) (attached as **Exhibit 6**); *Falgoust v. Microsoft Corp.*, No. 00-0779, 2000 WL 462919 (E.D. La. Apr. 19, 2000) (attached as **Exhibit 7**); *Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.,* No. Sa CV 03-813GLT(ANX), 2003 WL 22025158 (C.D. Cal. June 30, 2003) (attached as **Exhibit 8**); *Cantrell v. Wyeth*, No. 303CV1659G, 2003 WL 22251079 (N.D. Tex. Sept. 19, 2003) (attached as **Exhibit 9**); *Boudreaux v. Metropolitan Life Ins. Co.*, No. 95-138, 1995 WL 83788 (E.D. La. Feb. 24, 1995) (attached at **Exhibit 10**); *Johnson v. AMR Corp.,* Nos. 95 C 7659-95 C 7664, 1996 WL

164415, at * 4 (N.D. Ill. Apr. 3, 1996) (noting that the best course is grant a stay and let the MDL judge rule on the pending motions) (attached as **Exhibit 11**), *Tench v. Jackson Nat'l Life Ins. Co.*, No. 99-C-5182, 1999 WL 1044923, *1-2 (N.D. Ill. Nov. 12, 1999) (stating that "stays are frequently granted to avoid duplicative efforts and preserve valuable judicial resources") (attached as **Exhibit 12**)

Where notice of a potential transfer has been filed with the MDL Panel, courts generally review three factors to decide whether to stay pending proceedings in the district court until the MDL Panel can rule. These factors are 1) hardship to the moving party if the stay is not granted; 2) potential prejudice to the nonmoving party; and 3) the judicial resources that can be saved by avoiding duplicative litigation if the cases are consolidated. *See, e.g., Rivers*, 980 F. Supp. at 1360. "Even where a nonmoving party claims that a stay will cause delay and prejudice, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay." *Arthur Magna, Inc. v. Del-Val Fin. Corp.,* Civ. A. No. 90-4378, 1991 WL 13725, at *1 (D. N.J. Feb. 1, 1991) (attached as **Exhibit 13**).

Without question, a stay is warranted here. A stay followed by multidistrict litigation would allow the MDL court to decide core jurisdictional objections possibly subject to repetition and reviewed at the appellate level in due course. Consistency as well as economy are thus served. *Ivy*, 901 F.2d at 9. Indeed, numerous highly effective and efficient procedures already are in place in MDL-875 to handle this case. *In re Asbestos Prods. Liab. Litig.*, Civ. No. MDL 875, 1996 WL 539589 at *1 (E.D. Pa. Sept. 19, 1996) (attached at **Exhibit 14**).

In contrast, any minor prejudice to plaintiff is far outweighed by the balance of interests favoring multidistrict treatment of asbestos litigation. Indeed, if this case is not stayed and is ultimately transferred to the multidistrict proceeding, "this Court will have needlessly expended

its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers*, 98 F. Supp. at 1360. Additionally, "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Id.* at 1360-61. Finally, the Court may issue rulings that conflict with those of the MDL court. *See Amer. Seafood, Inc. v. Magnolia Processing, Inc.*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) (attached as **Exhibit 15**). Simply put, this case will be transferred to MDL-875, just as the thousands of predecessor cases that have related to the same common issues of asbestos-related injury have been. In the brief interim prior to transfer, it is a waste of the parties', and imminently worse, the Court's time and resources to continue litigating before this Court, prior to transfer. Accordingly, a stay of all proceedings is warranted under such circumstances.

## V. NORTHROP GRUMMAN SHOULD BE GRANTED AN EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD

For efficiency and other reasons stated above, and pursuant to Federal Rule of Civil Procedure 6(b), Northrop Grumman moves this Court for an enlargement of time to answer or otherwise plead so that pretrial motions and answers related to the Complaint can be filed according to established procedures of MDL-875.

## CONCLUSION

For the foregoing reasons, Northrop Grumman respectfully requests that this Court stay all proceedings in this matter pending transfer of this action by the J.P.M.L. to MDL-875 in the Eastern District of Pennsylvania, and that it grant Northrop Grumman an extension of time to answer or otherwise plead through and including seven (7) days after this case is transferred to MDL-875.

ELZUFON AUSTIN REARDON TARLOV &
MONDELL, P.A.

/s/ *Penelope B. O'Connell*
_____
Penelope B. O'Connell (DE #4898)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899
(302) 428-3181

Nancy Shane Rappaport (DE #3428)
DLA PIPER US LLP
1650 Market Street, Suite 4900
Philadelphia, PA 19103
(215) 656-3357

Attorneys for Defendant
Northrop Grumman Corporation

Date: June 12, 2008

# Exhibits to the Memorandum in Support of the Motion to Stay

# EXHIBIT
# 1

# ELZUFON AUSTIN REARDON
# TARLOV & MONDELL, P.A. _____

JOHN A. ELZUFON    CHRISTIAN G. MCGARRY
JEFFREY M. AUSTIN    MATTHEW P. DONELSON
MARK L. REARDON    DIANE M. ANDREWS
EDWARD A. TARLOV    ————————————
SCOTT R. MONDELL    BARBARA SNAPP DANBERG
H. GARRETT BAKER    KATE G. SHUMAKER
ROBERT H. RICHTER    ANDREA C. RODGERS
COLLEEN D. SHIELDS    PENELOPE B. O'CONNELL
JOEL M. DONER    KRISTA REALE SAMIS
ROGER L. TRUEMPER    ANDREW J. CARMINE
SCOTT A. SIMPSON    PETER S. MURPHY

SENIOR COUNSEL:
FRANCIS J. TRZUSKOWSKI
JAMES F. KIPP

ATTORNEYS & COUNSELORS AT LAW
300 DELAWARE AVENUE
SUITE 1700, P.O. BOX 1630
WILMINGTON, DELAWARE, 19899-1630
PHONE: 302.428.3181
FACSIMILE: 302.428.3180
INTERNET: WWW.ELZUFON.COM
WRITERS E-MAIL: POCONNELL@ELZUFON.COM

June 12, 2008

**BY OVERNIGHT DELIVERY**

Mr. Jeffrey N. Lüthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
Room G-255, North Lobby
One Columbus Circle, N.E.
Washington D.C. 20002-8004

Re:    **BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**
       *IN RE ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)*,
       **DOCKET NO. MDL-875**

       **NOTICE OF TAG-ALONG ACTION**

Dear Mr. Lüthi:

Attached at Tab 1 is a copy of the Complaint in *Seitz v. Adel Wiggins Group, et al.*, an action seeking damages for asbestos-related injuries filed in the Superior Court of Delaware, New Castle County, Case No. 08C-04-247 ASB. *Seitz* was removed to the United States District Court for the District of Delaware. A copy of the Notice of Removal is attached at Tab 2. *Seitz* is related to and shares common issues of fact with the actions in *In Re Asbestos Products Liability Litigation*, Docket No. MDL-875 ("MDL-875"), which were transferred to the Eastern District of Pennsylvania before the Honorable James T. Giles, pursuant to the Panel's Order and Opinion of July 29, 1991. *In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991).

*Seitz* involves common issues of fact with and is related to the actions in MDL-875 in a number of respects. First and most importantly, the causes of action in *Seitz* are based on the

Mr. Jeffrey N. Lüthi
June 12, 2008
Page 2

same factual predicates as other actions in MDL-875 – namely, allegations of asbestos-related disease or injury stemming from exposure to asbestos in products and on premises and inhalation of asbestos fibers.   Second, based on these allegations, the Seitzes assert the same causes of action as the plaintiffs in MDL-875 including, negligence and strict liability.   Third, like the plaintiffs in MDL-875, the Seitzes seek to recover compensatory damages for asbestos-related disease or injury.   For these reasons, discovery in *Seitz* would be streamlined and conducted more efficiently through the coordinated multidistrict discovery process already in place in MDL-875 governing the same types of asbestos allegations, claims and damages.   Accordingly, pursuant to R.P.J.P.M.L 7.2(i), 7.3(a), 7.4 and 7.5(e), Defendant Northrop Grumman Corporation hereby notifies the Panel that *Seitz* is pending in federal court and should be transferred to the Eastern District of Pennsylvania to become part of MDL-875.

If you have any questions, please do not hesitate to contact me at the above telephone number.

Very truly yours,

ELZUFON AUSTIN REARDON TARLOV & MONDELL, P.A NANCY SHANE RAPPAPORT

Penelope B. O'Connell

cc:    United States District Court, District of Delaware (via hand delivery only)
       All Counsel of Record in *Seitz* (*See* Tab 3) (via mail only)

# EXHIBIT
# 2

## DISTRIBUTION OF PENDING MDL DOCKETS
### (AS OF MARCH 10, 2008)

| District | JUDGE | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| ARE | D.J. William R. Wilson, Jr. | MDL-1507 IN RE: Prempro Products Liability Litigation | 3,741 | 4,569 |
| ARW | D.J. Harry F. Barnes | MDL-1832 IN RE: Pilgrim's Pride Fair Labor Standards Act Litigation | 16 | 16 |
| AZ | D.J. Mary H. Murguia | MDL-1910 IN RE: Phoenix Licensing, L.L.C., Patent Litigation | 7 | 7 |
| | Sr.J. Paul G. Rosenblatt | MDL-1541 IN RE: Allstate Insurance Co. Fair Labor Standards Act Litigation | 4 | 5 |
| CAC | D.J. David O. Carter | MDL-1807 IN RE: Wachovia Securities, LLC, Wage and Hour Litigation | 17 | 20 |
| | D.J. Dale S. Fischer | MDL-1822 IN RE: Bluetooth Headset Products Liability Litigation | 27 | 27 |
| | D.J. Dale S. Fischer | MDL-1897 IN RE: Mattel, Inc., Toy Lead Paint Products Liability Litigation | 20 | 20 |
| | D.J. R. Gary Klausner | MDL-1816 IN RE: Katz Interactive Call Processing Patent Litigation | 53 | 54 |
| | D.J. R. Gary Klausner | MDL-1864 IN RE: Charlotte Russe, Inc., Fair and Accurate Credit Transactions Act (FACTA) Litigation | 3 | 3 |
| | D.J. S. James Otero | MDL-1891 IN RE: Korean Air Lines Co., Ltd., Antitrust Litigation | 70 | 70 |
| | Sr.J. Mariana R. Pfaelzer | MDL-1574 IN RE: Paxil Products Liability Litigation | 6 | 149 |
| | D.J. Manuel L. Real | MDL-1737 IN RE: American Honda Motor Co., Inc., Oil Filter Products Liability Litigation | 5 | 5 |
| | D.J. Christina A. Snyder | MDL-1671 IN RE: Reformulated Gasoline (RFG) Antitrust & Patent Litigation | 9 | 12 |
| | D.J. Christina A. Snyder | MDL-1825 IN RE: Midland National Life Insurance Co. Annuity Sales Practices Litigation | 2 | 2 |
| | C.J. Alicemarie H. Stotler | MDL-1803 IN RE: Banc of America Investment Services, Inc., Overtime Pay Litigation | 5 | 5 |
| | D.J. Stephen V. Wilson | MDL-1745 IN RE: Live Concert Antitrust Litigation | 22 | 22 |

| DISTRICT | JUDGE | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| CAN | D.J. William H. Alsup | MDL-1826 IN RE: Graphics Processing Units Antitrust Litigation | 51 | 52 |
| | D.J. Saundra Brown Armstrong | MDL-1781 IN RE: Cintas Corp. Overtime Pay Arbitration Litigation | 71 | 71 |
| | D.J. Saundra Brown Armstrong | MDL-1809 IN RE: Terminix Employment Practices Litigation | 2 | 2 |
| | D.J. Charles R. Breyer | MDL-1699 IN RE: Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation | 1,753 | 2,017 |
| | D.J. Charles R. Breyer | MDL-1793 IN RE: International Air Transportation Surcharge Antitrust Litigation | 101 | 102 |
| | D.J. Charles R. Breyer | MDL-1913 IN RE: Transpacific Passenger Air Transportation Antitrust Litigation | 16 | 16 |
| | Sr.J. Samuel Conti | MDL-1917 IN RE: Cathode Ray Tube (CRT) Antitrust Litigation | 15 | 15 |
| | D.J. Phyllis J. Hamilton | MDL-1486 IN RE: Dynamic Random Access Memory (DRAM) Antitrust Litigation | 26 | 45 |
| | D.J. Susan Y. Illston | MDL-1827 IN RE: TFT-LCD (Flat Panel) Antitrust Litigation | 135 | 135 |
| | D.J. Martin J. Jenkins | MDL-1648 IN RE: Rubber Chemicals Antitrust Litigation | 10 | 14 |
| | D.J. Marilyn Hall Patel | MDL-1770 IN RE: Wells Fargo Home Mortgage Overtime Pay Litigation | 4 | 4 |
| | D.J. Marilyn Hall Patel | MDL-1841 IN RE: Wells Fargo Loan Processor Overtime Pay Litigation | 2 | 2 |
| | C.J. Vaughn R. Walker | MDL-1606 IN RE: Deep Vein Thrombosis Litigation | 5 | 84 |
| | C.J. Vaughn R. Walker | MDL-1791 IN RE: National Security Agency Telecommunications Records Litigation | 48 | 49 |
| | D.J. James Ware | MDL-1665 IN RE: Acacia Media Technologies Corp. Patent Litigation | 22 | 23 |
| | D.J. Claudia Wilken | MDL-1819 IN RE: Static Random Access Memory (SRAM) Antitrust Litigation | 81 | 82 |
| | D.J. Ronald M. Whyte | MDL-1423 IN RE: Cygnus Telecommunications Technology, LLC, Patent Litigation | 3 | 30 |
| | D.J. Ronald M. Whyte | MDL-1754 IN RE: Apple iPod nano Products Liability Litigation | 5 | 8 |
| CAS | D.J. Roger T. Benitez | MDL-1806 IN RE: Morgan Stanley & Co., Inc., Overtime Pay Litigation (No. II) | 11 | 11 |
| | D.J. Roger T. Benitez | MDL-1889 IN RE: Peregrine Systems, Inc., Securities Litigation | 35 | 35 |
| | Sr.J. Napoleon A. Jones, Jr. | MDL-1296 IN RE: Alliance Equipment Lease Program Securities Litigation | 1 | 27 |
| | D.J. Jeffrey T. Miller | MDL-1751 IN RE: Jamster Marketing Litigation | 5 | 5 |
| CO | D.J. Robert E. Blackburn | MDL-1788 IN RE: Qwest Communications International, Inc., Securities & "ERISA" Litigation (No. II) | 8 | 30 |
| | D.J. Wiley Y. Daniel | MDL-1743 IN RE: American Family Mutual Insurance Co. Overtime Pay Litigation | 2 | 2 |
| CT | Sr.J. Alfred V. Covello | MDL-1568 IN RE: Parcel Tanker Shipping Services Antitrust Litigation | 2 | 18 |
| | D.J. Christopher F. Droney | MDL-1894 IN RE: U.S. Foodservice, Inc., Pricing Litigation | 3 | 3 |
| | D.J. Alvin W. Thompson | MDL-1463 IN RE: Xerox Corp. Securities Litigation | 22 | 22 |
| | D.J. Stefan R. Underhill | MDL-1542 IN RE: Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation | 15 | 15 |
| | D.J. Stefan R. Underhill | MDL-1631 IN RE: Publication Paper Antitrust Litigation | 28 | 31 |
| | D.J. Stefan R. Underhill | MDL-1642 IN RE: Polychloroprene Rubber (CR) Antitrust Litigation | 9 | 9 |
| | D.J. Stefan R. Underhill | MDL-1649 IN RE: Helicopter Crash Near Wendie Creek, British Columbia, on August 8, 2002 | 4 | 4 |

| District | Judge | Litigation | Serial Pendings | Total Number of Actions |
|---|---|---|---|---|
| DC | D.J. John D. Bates | MDL-1772 IN RE: Series 7 Broker Qualification Exam Scoring Litigation | 19 | 21 |
| | D.J. Rosemary M. Collyer | MDL-1880 IN RE: Papst Licensing Digital Camera Patent Litigation | 6 | 6 |
| | D.J. Paul L. Friedman | MDL-1869 IN RE: Rail Freight Fuel Surcharge Antitrust Litigation | 16 | 16 |
| | C.J. Thomas F. Hogan | MDL-1285 IN RE: Vitamin Antitrust Litigation | 3 | 84 |
| | D.J. Ellen Segal Huvelle | MDL-1792 IN RE: InPhonic, Inc., Wireless Phone Rebate Litigation | 15 | 15 |
| | D.J. Royce C. Lamberth | MDL-1307 IN RE: Columbia/HCA Healthcare Corp. Qui Tam Litigation (No. II) | 2 | 30 |
| | D.J. Richard J. Leon | MDL-1515 IN RE: Nifedipine Antitrust Litigation | 6 | 10 |
| | D.J. Richard J. Leon | MDL-1668 IN RE: Federal National Mortgage Association Securities, Derivative & "ERISA" Litigation | 7 | 18 |
| | D.J. James Robertson | MDL-1796 IN RE: Department of Veterans Affairs (VA) Data Theft Litigation | 3 | 3 |
| | D.J. Ricardo M. Urbina | MDL-1798 IN RE: Long-Distance Telephone Service Federal Excise Tax Refund Litigation | 4 | 4 |
| DE | D.J. Joseph J. Farnan, Jr. | MDL-1717 IN RE: Intel Corp. Microprocessor Antitrust Litigation | 76 | 77 |
| | C.J. Gregory M. Sleet | MDL-1660 IN RE: PharmaStem Therapeutics, Inc., Patent Litigation | 6 | 6 |
| | C.J. Gregory M. Sleet | MDL-1848 IN RE: Rembrandt Technologies, LP, Patent Litigation | 15 | 15 |
| | C.J. Gregory M. Sleet | MDL-1866 IN RE: Brimonidine Patent Litigation | 2 | 2 |
| FLM | D.J. Henry Lee Adams, Jr. | MDL-1698 IN RE: American General Life & Accident Insurance Co. Retiree Benefits "ERISA" Litigation | 80 | 80 |
| | D.J. Anne C. Conway | MDL-1769 IN RE: Seroquel Products Liability Litigation | 5,645 | 7,292 |
| | D.J. Timothy J. Corrigan | MDL-1828 IN RE: Imagitas, Inc., Drivers' Privacy Protection Act Litigation | 13 | 13 |
| | Sr.J. Paul A. Magnuson (MN) | MDL-1824 IN RE: Tri-State Water Rights Litigation | 6 | 6 |
| | D.J. James S. Moody, Jr. | MDL-1626 IN RE: Accutane Products Liability Litigation | 17 | 32 |
| FLS | D.J. Donald L. Graham | MDL-1888 IN RE: Marine Hose Antitrust Litigation (No. II) | 8 | 8 |
| | D.J. Kenneth A. Marra | MDL-1916 IN RE: Chiquita Brands International, Inc., Alien Tort Statute and Shareholders Derivative Litigation | 6 | 6 |
| | C.J. Federico A. Moreno | MDL-1334 IN RE: Managed Care Litigation | 9 | 124 |
| GAM | D.J. Clay D. Land | MDL-1854 IN RE: Tyson Foods, Inc., Fair Labor Standards Act Litigation | 25 | 25 |
| GAN | D.J. William S. Duffey, Jr. | MDL-1895 IN RE: LTL Shipping Services Antitrust Litigation | 50 | 50 |
| | D.J. Thomas W. Thrash, Jr. | MDL-1804 IN RE: Stand 'n Seal Products Liability Litigation | 35 | 36 |
| | D.J. Thomas W. Thrash, Jr. | MDL-1845 IN RE: ConAgra Peanut Butter Products Liability Litigation | 147 | 147 |
| IAS | Sr.J. Ronald E. Longstaff | MDL-1733 IN RE: Teflon Products Liability Litigation | 23 | 23 |

| District | Judge(s) | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| ILN | D.J Wayne R. Andersen | MDL-1876  IN RE: Long Beach Mortgage Company Truth in Lending Act 1-4 Family Rider Litigation | 3 | 3 |
| | Sr.J. Marvin E. Aspen | MDL-1425  IN RE: Aimster Copyright Litigation | 11 | 11 |
| | Sr.J. Marvin E. Aspen | MDL-1715  IN RE: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation | 447 | 457 |
| | D.J. Elaine E. Bucklo | MDL-1784  IN RE: McDonald's French Fries Litigation | 13 | 14 |
| | D.J. David H. Coar | MDL-1536  IN RE: Sulfuric Acid Antitrust Litigation | 7 | 7 |
| | D.J. David H. Coar | MDL-1783  IN RE: JP Morgan Chase & Co. Securities Litigation | 3 | 3 |
| | D.J. Robert W. Gettleman | MDL-1350  IN RE: Trans Union Corp. Privacy Litigation | 14 | 15 |
| | Sr.J. John F. Grady | MDL-986  IN RE: "Factor VIII or IX Concentrate Blood Products" Products Liability Litigation | 115 | 367 |
| | Sr.J. John F. Grady | MDL-1521  IN RE: Wireless Telephone 911 Calls Litigation | 10 | 10 |
| | Sr.J. John F. Grady | MDL-1703  IN RE: Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation | 4 | 7 |
| | C.J. James F. Holderman, Jr. | MDL-1818  IN RE: Citifinancial Services Incorporated Prescreened Offer Litigation | 10 | 10 |
| | Sr.J. Harry D. Leinenweber | MDL-1893  IN RE: RC2 Corp. Toy Lead Paint Products Liability Litigation | 18 | 18 |
| | D.J. Charles R. Norgle, Sr. | MDL-1491  IN RE: African-American Slave Descendants Litigation | 2 | 10 |
| | D.J. Charles R. Norgle, Sr. | MDL-1604  IN RE: Ocwen Federal Bank FSB Mortgage Servicing Litigation | 75 | 90 |
| | D.J. Amy J. St. Eve | MDL-1778  IN RE: Ocean Financial Corp. Prescreening Litigation | 5 | 6 |
| | D.J. James B. Zagel | MDL-899  IN RE: Mortgage Escrow Deposit Litigation | 1 | 75 |
| | D.J. James B. Zagel | MDL-1392  IN RE: General Motors Corporation Vehicle Paint Litigation (No. II) | 2 | 3 |
| ILS | D.J. G. Patrick Murphy | MDL-1562  IN RE: General Motors Corp. Dex-Cool Products Liability Litigation | 6 | 12 |
| | D.J. G. Patrick Murphy | MDL-1748  IN RE: Profiler Products Liability Litigation | 4 | 4 |
| INN | Sr.J. Rudy J. Lozano | MDL-1767  IN RE: H&R Block Mortgage Corp. Prescreening Litigation | 3 | 3 |
| | C.J. Robert L. Miller, Jr. | MDL-1700  IN RE: FedEx Ground Package System, Inc., Employment Practices Litigation (No. II) | 57 | 63 |
| INS | D.J. Sarah E. Barker | MDL-1373  IN RE: Bridgestone/Firestone, Inc., Tires Products Liability Litigation | 15 | 824 |
| | C.J. David F. Hamilton | MDL-1313  IN RE: AT&T Corp. Fiber Optic Cable Installation Litigation | 43 | 43 |
| | D.J. Larry J. McKinney | MDL-1727  IN RE: COBRA Tax Shelters Litigation | 3 | 4 |
| KS | D.J. John W. Lungstrum | MDL-1468  IN RE: Universal Service Fund Telephone Billing Practices Litigation | 63 | 68 |
| | D.J. John W. Lungstrum | MDL-1616  IN RE: Urethane Antitrust Litigation | 30 | 30 |
| | C.J. Kathryn H. Vratil | MDL-1721  IN RE: Cessna 208 Series Aircraft Products Liability Litigation | 8 | 9 |
| | C.J. Kathryn H. Vratil | MDL-1840  IN RE: Motor Fuel Temperature Sales Practices Litigation | 50 | 50 |
| | C.J. Kathryn H. Vratil | MDL-1853  IN RE: The TJX Companies, Inc., Fair and Accurate Credit Transactions Act (FACTA) Litigation | 9 | 9 |
| KYE | Sr.J. Joseph M. Hood | MDL-1877  IN RE: ClassicStar Mare Lease Litigation | 18 | 18 |

| District | Judge | | Description | Judges Pending | Total Number of Actions |
|---|---|---|---|---|---|
| LAE | D.J. Kurt D. Engelhardt | MDL-1873 | IN RE: FEMA Trailer Formaldehyde Products Liability Litigation | 15 | 15 |
| | D.J. Eldon E. Fallon | MDL-1355 | IN RE: Propulsid Products Liability Litigation | 297 | 474 |
| | D.J. Eldon E. Fallon | MDL-1657 | IN RE: Vioxx Marketing, Sales Practices and Products Liability Litigation | 9,284 | 9,882 |
| | D.J. Martin L.C. Feldman | MDL-1390 | IN RE: Life Insurance Co. of Georgia Industrial Life Insurance Litigation | 52 | 133 |
| | D.J. Sarah S. Vance | MDL-1643 | IN RE: Educational Testing Service PLT 7-12 Test Scoring Litigation | 2 | 31 |
| MA | D.J. Nancy Gertner | MDL-1354 | IN RE: Citigroup, Inc., Capital Accumulation Plan Litigation | 8 | 18 |
| | Sr.J. Edward F. Harrington | MDL-1143 | IN RE: Mutual Life Insurance Company of New York Premium Litigation | 2 | 23 |
| | D.J. Patti B. Saris | MDL-1456 | IN RE: Pharmaceutical Industry Average Wholesale Price Litigation | 3 | 119 |
| | D.J. Patti B. Saris | MDL-1629 | IN RE: Neurontin Marketing, Sales Practices and Products Liability Litigation | 10 | 231 |
| | D.J. Richard G. Stearns | MDL-1861 | IN RE: Wellnx Marketing and Sales Practices Litigation | 16 | 16 |
| | D.J. Joseph L. Tauro | MDL-1790 | IN RE: Volkswagen and Audi Warranty Extension Litigation | 2 | 8 |
| | D.J. Joseph L. Tauro | MDL-1820 | IN RE: Webloyalty.com, Inc., Marketing and Sales Practices Litigation | 2 | 5 |
| | D.J. Joseph L. Tauro | MDL-1870 | IN RE: Greenwood Credit Union Prescreening Litigation | 3 | 3 |
| | D.J. Douglas P. Woodlock | MDL-1543 | IN RE: Carbon Black Antitrust Litigation | 1 | 16 |
| | D.J. Douglas P. Woodlock | MDL-1704 | IN RE: M3Power Razor System Marketing & Sales Practices Litigation | 1 | 26 |
| | D.J. William G. Young | MDL-1838 | IN RE: The TJX Companies, Inc., Customer Data Security Breach Litigation | 28 | 28 |
| | D.J. Rya W. Zobel | MDL-1380 | IN RE: Xcelera.com Inc. Securities Litigation | 1 | 20 |
| | D.J. Rya W. Zobel | MDL-1461 | IN RE: Shell Oil Products Co. Dealer Franchise Litigation | 1 | 3 |
| MD | D.J. Catherine C. Blake | MDL-1539 | IN RE: Royal Ahold N.V. Securities & "ERISA" Litigation | 37 | 37 |
| | C.J. Benson Everett Legg | MDL-1387 | IN RE: ProteGen Sling and Vesica System Products Liability Litigation | 4 | 584 |
| | D.J. J. Frederick Motz | MDL-1332 | IN RE: Microsoft Corp. Windows Operating Systems Antitrust Litigation | 2 | 117 |
| | D.J. J. Frederick Motz, D.J. Andre M. Davis and D.J. Catherine C. Blake | MDL-1586 | IN RE: Mutual Funds Investment Litigation | 423 | 437 |
| | D.J. Roger W. Titus | MDL-1911 | IN RE: Michelin North America, Inc., PAX System Marketing and Sales Practices Litigation | 4 | 4 |
| ME | D.J. D. Brock Hornby | MDL-1532 | IN RE: New Motor Vehicles Canadian Export Antitrust Litigation | 27 | 31 |
| MIE | D.J. Sean F. Cox | MDL-1867 | IN RE: OnStar Contract Litigation | 22 | 23 |
| | C.J. Bernard A. Friedman | MDL-1718 | IN RE: Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation | 78 | 81 |
| | D.J. Gerald E. Rosen | MDL-1725 | IN RE: Delphi Corp. Securities, Derivative & "ERISA" Litigation | 22 | 25 |
| | D.J. Gerald E. Rosen | MDL-1749 | IN RE: General Motors Corp. Securities & Derivative Litigation | 5 | 5 |
| MIW | C.J. Robert Holmes Bell | MDL-1846 | IN RE: Trade Partners, Inc., Investors Litigation | 5 | 5 |

Page 6

| District | Judge(s) | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| MN | D.J. Michael J. Davis | MDL-1431  IN RE: Baycol Products Liability Litigation | 330 | 9,090 |
| | Sr.J. David S. Doty | MDL-1892  IN RE: KFC Corp. Fair Labor Standards Act Litigation | 27 | 28 |
| | D.J. Donovan W. Frank | MDL-1708  IN RE: Guidant Corp. Implantable Defibrillators Products Liability Litigation | 2,056 | 2,086 |
| | Sr.J. Richard H. Kyle | MDL-1905  IN RE: Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation | 31 | 31 |
| | Sr.J. Paul A. Magnuson | MDL-1724  IN RE: Viagra Products Liability Litigation | 134 | 140 |
| | C.J. James M. Rosenbaum | MDL-1726  IN RE: Medtronic, Inc., Implantable Defibrillators Products Liability Litigation | 1,115 | 1,191 |
| | C.J. James M. Rosenbaum | MDL-1836  IN RE: Mirapex Products Liability Litigation | 275 | 275 |
| | D.J. John R. Tunheim | MDL-1396  IN RE: St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation | 20 | 57 |
| MOE | D.J. Jean C. Hamilton | MDL-1702  IN RE: Air Crash Near Kirksville, Missouri, on October 19, 2004 | 4 | 12 |
| | Sr.J. Stephen N. Limbaugh | MDL-1672  IN RE: Express Scripts, Inc., Pharmacy Benefits Management Litigation | 13 | 20 |
| | D.J. Catherine D. Perry | MDL-1811  IN RE: Genetically Modified Rice Litigation | 222 | 222 |
| | D.J. Rodney W. Sippel | MDL-1620  IN RE: Metoprolol Succinate Patent Litigation | 8 | 8 |
| | D.J. Rodney W. Sippel | MDL-1736  IN RE: Celexa and Lexapro Products Liability Litigation | 43 | 43 |
| | D.J. E. Richard Webber | MDL-1907  IN RE: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation | 4 | 4 |
| MOW | D.J. Richard E. Dorr | MDL-1786  IN RE: H&R Block, Inc., Express IRA Marketing Litigation | 20 | 21 |
| MSS | D.J. Keith Starrett | MDL-1872  IN RE: Wayne Farms LLC Fair Labor Standards Act Litigation | 12 | 12 |
| NCM | C.J. James A. Beaty, Jr. | MDL-1622  IN RE: Cotton Yarn Antitrust Litigation | 9 | 9 |
| NCW | C.J. Richard L. Voorhees | MDL-1516  IN RE: Polyester Staple Antitrust Litigation | 14 | 36 |
| NE | D.J. Laurie Smith Camp | MDL-1920  IN RE: Saturn L-Series Timing Chain Products Liability Litigation | 3 | 3 |
| NH | D.J. Paul J. Barbadoro | MDL-1335  IN RE: Tyco International, Ltd., Securities, Derivative and "ERISA" Litigation | 12 | 104 |

| STATE | JUDGE | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| NJ | Sr.J. Harold A. Ackerman | MDL-1687 IN RE: Ford Motor Co. E-350 Van Products Liability Litigation (No. II) | 5 | 5 |
| | C.J. Garrett E. Brown, Jr. | MDL-1471 IN RE: Compensation of Managerial, Professional and Technical Employees Antitrust Litigation | 4 | 4 |
| | C.J. Garrett E. Brown, Jr. | MDL-1663 IN RE: Insurance Brokerage Antitrust Litigation | 45 | 47 |
| | D.J. Stanley R. Chesler | MDL-1658 IN RE: Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation | 1 | 35 |
| | D.J. Stanley R. Chesler | MDL-1777 IN RE: SFBC International, Inc., Securities & Derivative Litigation | 1 | 14 |
| | D.J. Stanley R. Chesler | MDL-1857 IN RE: Schering Marketing and Sales Practices Litigation (No. II) | 6 | 6 |
| | D.J. Mary L. Cooper | MDL-1851 IN RE: Desloratadine Patent Litigation | 4 | 4 |
| | Sr.J. Dickinson R. Debevoise | MDL-1337 IN RE: Holocaust Era German Industry, Bank & Insurance Litigation | 2 | 59 |
| | Sr.J. Dickinson R. Debevoise | MDL-1914 IN RE: Mercedes-Benz Tele Aid Contract Litigation | 4 | 4 |
| | D.J. Joseph A. Greenaway, Jr. | MDL-1419 IN RE: K-Dur Antitrust Litigation | 1 | 44 |
| | D.J. Noel L. Hillman | MDL-1850 IN RE: Pet Food Products Liability Litigation | 116 | 116 |
| | D.J. Faith S. Hochberg | MDL-1384 IN RE: Gabapentin Patent Litigation | 13 | 17 |
| | D.J. Faith S. Hochberg | MDL-1479 IN RE: Neurontin Antitrust Litigation | 22 | 22 |
| | Sr.J. Joseph E. Irenas | MDL-1881 IN RE: Boscov's Department Store, L.L.C, Fair and Accurate Credit Transactions Act (FACTA) Litigation | 3 | 3 |
| | D.J. Jose L. Linares | MDL-1730 IN RE: Hypodermic Products Antitrust Litigation | 9 | 10 |
| | D.J. William J. Martini | MDL-1763 IN RE: Human Tissue Products Liability Litigation | 208 | 216 |
| | D.J. Jerome B. Simandle | MDL-1514 IN RE: Electrical Carbon Products Antitrust Litigation | 1 | 25 |
| | Sr.J. William H. Walls | MDL-1292 IN RE: Cendant Corporation Securities Litigation | 3 | 18 |
| | D.J. Susan D. Wigenton | MDL-1550 IN RE: IDT Corp. Calling Card Terms Litigation | 4 | 5 |
| | D.J. Freda L. Wolfson | MDL-1799 IN RE: Vonage Initial Public Offering (IPO) Securities Litigation | 1 | 16 |
| | D.J. Freda L. Wolfson | MDL-1862 IN RE: Vonage Marketing and Sales Practices Litigation | 5 | 5 |
| NV | D.J. Kent J. Dawson | MDL-1619 IN RE: Musha Cay Litigation | 3 | 3 |
| | Sr.J. Lloyd D. George | MDL-1357 IN RE: NOS Communications, Inc., Billing Practices Litigation | 7 | 8 |
| | D.J. Robert Clive Jones | MDL-1878 IN RE: Internal Revenue Service §1031 Tax Deferred Exchange Litigation | 5 | 5 |
| | D.J. Philip M. Pro | MDL-1566 IN RE: Western States Wholesale Natural Gas Antitrust Litigation | 6 | 33 |
| | D.J. Philip M. Pro | MDL-1735 IN RE: Wal-Mart Wage and Hour Employment Practices Litigation | 33 | 35 |

| Circuit | Judge | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| NYE | D.J. Brian M. Cogan | MDL-1844 IN RE: Air Crash Near Peixoto de Azeveda, Brazil, on September 29, 2006 | 68 | 68 |
| | C.J. Raymond J. Dearie | MDL-1613 IN RE: Nigeria Charter Flights Contract Litigation | 10 | 14 |
| | D.J. John Gleeson | MDL-1575 IN RE: Visa/MasterCard Antitrust Litigation | 5 | 8 |
| | D.J. John Gleeson | MDL-1720 IN RE: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation | 51 | 51 |
| | Sr.J. Thomas C. Platt, Jr. | MDL-1775 IN RE: Air Cargo Shipping Services Antitrust Litigation | 94 | 95 |
| | Sr.J. Thomas C. Platt, Jr. | MDL-799 IN RE: Air Disaster at Lockerbie, Scotland, on December 21, 1988 | 37 | 297 |
| | Sr.J. David G. Trager | MDL-1898 IN RE: American Home Mortgage Securities Litigation | 19 | 19 |
| | Sr.J. Jack B. Weinstein | MDL-1738 IN RE: Vitamin C Antitrust Litigation | 10 | 10 |
| | Sr.J. Jack B. Weinstein | MDL-381 IN RE: "Agent Orange" Products Liability Litigation | 6 | 629 |
| | Sr.J. Jack B. Weinstein | MDL-1596 IN RE: Zyprexa Products Liability Litigation | 1,866 | 1,869 |
| NYS | Sr.J. Harold Baer, Jr. | MDL-1661 IN RE: Rivastigmine Patent Litigation | 4 | 5 |
| | D.J. Deborah A. Batts | MDL-1714 IN RE: Rhodia S.A. Securities Litigation | 4 | 4 |
| | D.J. Richard A. Berman | MDL-1628 IN RE: Pineapple Antitrust Litigation | 6 | 10 |
| | D.J. Charles L. Brieant | MDL-1508 IN RE: Medco Health Solutions, Inc., Pharmacy Benefits Management Litigation | 5 | 18 |
| | D.J. Charles L. Brieant | MDL-1903 IN RE: PepsiCo, Inc., Bottled Water Marketing and Sales Practices Litigation | 4 | 4 |
| | D.J. Denise Cote | MDL-1487 IN RE: WorldCom, Inc., Securities & "ERISA" Litigation | 3 | 177 |
| | D.J. Paul A. Crotty | MDL-1794 IN RE: Novartis Wage and Hour Litigation | 2 | 2 |
| | D.J. George B. Daniels | MDL-1379 IN RE: Literary Works in Electronic Databases Copyright Litigation | 3 | 5 |
| | D.J. George B. Daniels | MDL-1570 IN RE: Terrorist Attacks on September 11, 2001 | 24 | 25 |
| | Sr.J. Kevin Thomas Duffy | MDL-1443 IN RE: America Online, Inc., Community Leaders Litigation | 3 | 3 |
| | Sr.J. Thomas P. Griesa | MDL-1336 IN RE: Abercrombie & Fitch Co. Securities Litigation | 20 | 20 |
| | Sr.J. Thomas P. Griesa | MDL-1644 IN RE: Elevator and Escalator Antitrust Litigation | 4 | 25 |
| | D.J. Richard J. Holwell | MDL-1771 IN RE: "A Million Little Pieces" Litigation | 11 | 11 |
| | D.J. Barbara S. Jones | MDL-1291 IN RE: Omeprazole Patent Litigation | 5 | 22 |
| | D.J. Lewis A. Kaplan | MDL-1348 IN RE: Rezulin Products Liability Litigation | 751 | 1,868 |
| | D.J. Lewis A. Kaplan | MDL-1653 IN RE: Parmalat Securities Litigation | 17 | 17 |
| | Sr.J. John F. Keenan | MDL-1484 IN RE: Merrill Lynch & Co., Inc., Research Reports Securities Litigation | 21 | 176 |
| | Sr.J. John F. Keenan | MDL-1789 IN RE: Fosamax Products Liability Litigation | 412 | 413 |
| | Sr.J. Shirley Wohl Kram | MDL-1500 IN RE: AOL Time Warner Inc. Securities & "ERISA" Litigation | 35 | 72 |
| | Sr.J. Shirley Wohl Kram | MDL-1739 IN RE: Grand Theft Auto Video Game Consumer Litigation (No. II) | 8 | 8 |
| | Sr.J. Shirley Wohl Kram | MDL-1744 IN RE: Marsh & McLennan Companies, Inc., Securities Litigation | 7 | 10 |
| | D.J. Gerard E. Lynch | MDL-1472 IN RE: Global Crossing Ltd. Securities and "ERISA" Litigation | 2 | 89 |
| | D.J. Gerard E. Lynch | MDL-1902 IN RE: Refco Inc. Securities Litigation | 13 | 13 |
| | Sr.J. Lawrence M. McKenna | MDL-1529 IN RE: Adelphia Communications Corp. Securities & Derivative Litigation (No. II) | 72 | 72 |

| District | Judge | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| NYS (cont.) | D.J. Colleen McMahon | MDL-1695 IN RE: Veeco Instruments Inc. Securities Litigation | 13 | 13 |
| | D.J. Colleen McMahon | MDL-1755 IN RE: Bayou Hedge Funds Investment Litigation | 9 | 10 |
| | Sr.J. Richard Owen | MDL-1688 IN RE: Pfizer Inc. Securities, Derivative & "ERISA" Litigation | 30 | 30 |
| | Sr.J. Richard Owen | MDL-1706 IN RE: Doral Financial Corp. Securities Litigation | 24 | 25 |
| | D.J. William H. Pauley III | MDL-1409 IN RE: Currency Conversion Fee Antitrust Litigation | 5 | 35 |
| | D.J. Loretta A. Preska | MDL-1659 IN RE: Nortel Networks Corp. Securities Litigation | 2 | 30 |
| | D.J. Loretta A. Preska | MDL-1780 IN RE: Digital Music Antitrust Litigation | 30 | 31 |
| | D.J. Jed S. Rakoff | MDL-1598 IN RE: Ephedra Products Liability Litigation | 519 | 861 |
| | D.J. Shira Ann Scheindlin | MDL-1358 IN RE: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation | 145 | 167 |
| | D.J. Shira Ann Scheindlin | MDL-1428 IN RE: Ski Train Fire in Kaprun, Austria, on November 11, 2000 | 8 | 27 |
| | D.J. Shira Ann Scheindlin | MDL-1554 IN RE: Initial Public Offering (IPO) Securities Litigation | 393 | 511 |
| | Sr.J. John E. Sprizzo | MDL-1153 IN RE: Bennett Funding Group, Inc., Securities Litigation (No. II) | 29 | 66 |
| | Sr.J. John E. Sprizzo | MDL-1499 IN RE: South African Apartheid Litigation | 13 | 14 |
| | Sr.J. John E. Sprizzo | MDL-1584 IN RE: Federal Home Loan Mortgage Corp. Securities & Derivative Litigation (No. II) | 1 | 8 |
| | D.J. Sidney H. Stein | MDL-1603 IN RE: OxyContin Antitrust Litigation | 59 | 63 |
| | Sr.J. Robert W. Sweet and Sr.J. John F. Keenan* | MDL-1448 IN RE: Air Crash at Belle Harbor, New York, on November 12, 2001 | 52 | 376 |
| | | * Judge Keenan is assigned to actions in which Judge Sweet is recused. | | |
| OHN | D.J. Peter C. Economus | MDL-1561 IN RE: Travel Agent Commission Antitrust Litigation | 1 | 3 |
| | Sr.J. David A. Katz | MDL-1742 IN RE: Ortho Evra Products Liability Litigation | 1,040 | 1,179 |
| | D.J. Donald C. Nugent | MDL-1488 IN RE: Ford Motor Co. Panther Platform/Fuel Tank Design Products Liability Litigation | 3 | 31 |
| | D.J. Kathleen McDonald O'Malley | MDL-1401 IN RE: Sulzer Orthopedics Inc. Hip Prosthesis and Knee Prosthesis Products Liability Litigation | 3 | 434 |
| | D.J. Kathleen McDonald O'Malley | MDL-1490 IN RE: Commercial Money Center, Inc., Equipment Lease Litigation | 31 | 38 |
| | D.J. Kathleen McDonald O'Malley | MDL-1535 IN RE: Welding Fume Products Liability Litigation | 3,299 | 11,569 |
| | D.J. Dan A. Polster | MDL-1909 IN RE: Gadolinium Contrast Dyes Products Liability Litigation | 25 | 25 |
| OHS | D.J. Gregory L. Frost | MDL-1638 IN RE: Foundry Resins Antitrust Litigation | 1 | 20 |
| | Sr.J. James L. Graham | MDL-1565 IN RE: National Century Financial Enterprises, Inc., Investment Litigation | 21 | 22 |
| | Sr.J. James L. Graham | MDL-1829 IN RE: Vision Service Plan Tax Litigation | 5 | 5 |
| OKW | D.J. Stephen P. Friot | MDL-1564 IN RE: Farmers Insurance Co., Inc., FCRA Litigation | 7 | 12 |
| OR | Sr.J. Robert E. Jones | MDL-1439 IN RE: Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation | 4 | 13 |

| District | Judge | Litigation | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| PAE | C.J. Harvey Bartle III | MDL-1203  IN RE: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation | 983 | 20,156 |
| | D.J. Ronald L. Buckwalter | MDL-1014  IN RE: Orthopedic Bone Screw Products Liability Litigation | 1 | 3,085 |
| | D.J. Ronald L. Buckwalter | MDL-1741  IN RE: Isolagen, Inc., Securities & Derivative Litigation | 5 | 5 |
| | D.J. Stewart Dalzell | MDL-1682  IN RE: Hydrogen Peroxide Antitrust Litigation | 2 | 34 |
| | D.J. Legrone D. Davis | MDL-1684  IN RE: Plastics Additives Antitrust Litigation (No. II) | 8 | 10 |
| | Sr.J. Jan E. DuBois | MDL-1261  IN RE: Linerboard Antitrust Litigation | 2 | 20 |
| | Sr.J. John P. Fullam | MDL-1782  IN RE: Pharmacy Benefit Managers Antitrust Litigation | 6 | 6 |
| | Sr.J. James T. Giles | MDL-875   IN RE: Asbestos Products Liability Litigation (No. VI) | 34,383 | 112,229 |
| | Sr.J. Bruce W. Kauffman | MDL-969   IN RE: Unisys Corp. Retiree Medical Benefit "ERISA" Litigation | 8 | 14 |
| | D.J. Mary A. McLaughlin | MDL-1712  IN RE: American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation | 14 | 15 |
| | Sr.J. Thomas N. O'Neill, Jr. | MDL-1904  IN RE: OSI Restaurant Partners, LLC, Fair and Accurate Credit Transactions Act (FACTA) Litigation | 4 | 4 |
| | Sr.J. Louis H. Pollak | MDL-1817  IN RE: CertainTeed Corp. Roofing Shingle Products Liability Litigation | 21 | 21 |
| | D.J. Cynthia M. Rufe | MDL-1871  IN RE: Avandia Marketing, Sales Practices and Products Liability Litigation | 130 | 130 |
| | D.J. Timothy J. Savage | MDL-1675  IN RE: ACE Limited Securities Litigation | 4 | 4 |
| | D.J. Timothy J. Savage | MDL-1768  IN RE: Methyl Methacrylate (MMA) Antitrust Litigation | 18 | 18 |
| | D.J. Lawrence F. Stengel | MDL-1879  IN RE: Sterling Financial Corporation Securities Litigation | 1 | 9 |
| | D.J. Richard Barclay Surrick | MDL-1426  IN RE: Automotive Refinishing Paint Antitrust Litigation | 61 | 63 |
| | D.J. Richard Barclay Surrick | MDL-1912  IN RE: Fasteners Antitrust Litigation | 20 | 20 |
| PAM | D.J. Thomas I. Vanaskie | MDL-1556  IN RE: Pressure Sensitive Labelstock Antitrust Litigation | 11 | 11 |
| PAW | D.J. Gary L. Lancaster | MDL-1674  IN RE: Community Bank of Northern Virginia Mortgage Lending Practices Litigation | 7 | 8 |
| RI | C.J. Mary M. Lisi | MDL-1842  IN RE: Kugel Mesh Hernia Patch Products Liability Litigation | 539 | 541 |
| SC | Sr.J. C. Weston Houck | MDL-1865  IN RE: Household Goods Movers Antitrust Litigation | 3 | 3 |
| | C.J. David C. Norton | MDL-1785  IN RE: Bausch & Lomb Inc. Contact Lens Solution Products Liability Litigation | 290 | 292 |
| TNE | C.J. Curtis L. Collier | MDL-1552  IN RE: UnumProvident Corp. Securities, Derivative & "ERISA" Litigation | 19 | 28 |
| | D.J. J. Ronnie Greer | MDL-1899  IN RE: Southeastern Milk Antitrust Litigation | 6 | 6 |
| TNM | C.J. Todd J. Campbell | MDL-1760  IN RE: Aredia and Zometa Products Liability Litigation | 380 | 388 |
| | Sr.J. John T. Nixon | MDL-1537  IN RE: Nortel Networks Corp. "ERISA" Litigation | 6 | 6 |
| | D.J. Aleta A. Trauger | MDL-1457  IN RE: Allstate Insurance Co. Underwriting and Rating Practices Litigation | 6 | 11 |
| TNW | D.J. J. Daniel Breen | MDL-1551  IN RE: Reciprocal of America (ROA) Sales Practices Litigation | 15 | 15 |

| DIST. | JUDGE | LITIGATION | Actions Pending | Total Number of Actions |
|---|---|---|---|---|
| TXE | D.J. Leonard E. Davis | MDL-1512 IN RE: Electronic Data Systems Corp. Securities & "ERISA" Litigation | 4 | 29 |
| | D.J. T. John Ward | MDL-1530 IN RE: Fleming Companies Inc. Securities & Derivative Litigation | 10 | 22 |
| TXN | Sr.J. A. Joe Fish | MDL-1578 IN RE: UICI "Association-Group" Insurance Litigation | 2 | 28 |
| | D.J. Terry R. Means | MDL-1875 IN RE: RadioShack Corp. "ERISA" Litigation | 4 | 4 |
| TXS | D.J. Vanessa D. Gilmore | MDL-1646 IN RE: Testmasters Trademark Litigation | 1 | 6 |
| | D.J. Melinda Harmon | MDL-1446 IN RE: Enron Corp. Securities, Derivative & "ERISA" Litigation | 110 | 196 |
| | D.J. Lynn N. Hughes | MDL-1609 IN RE: Service Corporation International Securities Litigation | 1 | 4 |
| | D.J. Janis Graham Jack | MDL-1810 IN RE: MERSCORP Inc., et al., Real Estate Settlement Procedures Act (RESPA) Litigation | 13 | 30 |
| | D.J. Sim Lake | MDL-1886 IN RE: Refined Petroleum Products Antitrust Litigation | 6 | 6 |
| UT | D.J. Dale A. Kimball | MDL-1546 IN RE: Medical Waste Services Antitrust Litigation | 1 | 8 |
| VAE | D.J. Leonie M. Brinkema | MDL-1705 IN RE: Xybernaut Corp. Securities Litigation | 9 | 10 |
| WAW | Sr.J. John C. Coughenour | MDL-1896 IN RE: General Motors Corp. Speedometer Products Liability Litigation | 3 | 3 |
| | D.J. Marsha J. Pechman | MDL-1919 IN RE: Washington Mutual, Inc., Securities, Derivative & "ERISA" Litigation | 15 | 15 |
| | D.J. Barbara Jacobs Rothstein | MDL-1407 IN RE: Phenylpropanolamine (PPA) Products Liability Litigation | 199 | 3,376 |
| WY | C.J. William F. Downes | MDL-1293 IN RE: Natural Gas Royalties Qui Tam Litigation | 74 | 83 |

# EXHIBIT
# 3

Westlaw.

Not Reported in F.Supp.2d
(Cite as: 2002 WL 1128268 (Jud.Pan.Mult.Lit.))

Page 1

**H**
Only the Westlaw citation is currently available.

Judicial Panel on Multidistrict Litigation.

In re ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)

Nos. 875, C02-0194PJH.

April 3, 2002.

*(SEE ATTACHED SCHEDULE)*

BECK, J.

*CONDITIONAL TRANSFER ORDER (CTO-211)*

*1 On July 29, 1991, the Panel transferred 22,003 civil-actions to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, more than 72,201 additional actions have been transferred to the Eastern District of Pennsylvania. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Weiner.

It appears that the actions listed on the attached schedule involve questions of fact which are common to the actions previously transferred to the Eastern District of Pennsylvania and assigned to Judge Weiner.

Pursuant to Rule 7.4 of the *Rules of Procedure of the Judicial Panel on Multidistrict Litigation,* 199 F.R.D. 425, 435-36 (2001), the actions on the attached schedule are hereby transferred under 28 U.S.C. § 1407 to the Eastern District of Pennsylvania for the reasons stated in the opinion and order of July 29, 1991, 771 F.Supp. 415 (J.P.M.L.1991), and, with the consent of that court, assigned to the Honorable Charles R. Weiner.

This order does not become effective until it is filed in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

2002 WL 1128268 (Jud.Pan.Mult.Lit.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
# 4

Westlaw.

Not Reported in F.Supp.2d
(Cite as: 2001 WL 1042562 (Jud.Pan.Mult.Lit.))

Page 1

**H**

Only the Westlaw citation is currently available.

Judicial Panel on Multidistrict Litigation.

In re ASBESTOS PRODUCTS LIABILITY
LITIGATION (No. VI)
Rolando DOVAL, et al.
v.
MAREMONT CORP., N.D. California,
v.
Joseph PEREZ, et al.
v.
CENTER FOR CLAIMS RESOLUTION, INC., N.D.
California,
Thomas F. LOWRY, III, et al.
v.
CENTER FOR CLAIMS RESOLUTION, INC., et
al.,

Nos. 875, 3:01-540, 3:01-1627, 1:00-1454.

Aug. 29, 2001.

Before WM. TERRELL HODGES, Chairman,
JOHN F. KEENAN, MOREY L. SEAR, BRUCE M.
SELYA, [FN*] JULIA SMITH GIBBONS, D.
LOWELL JENSEN and J. FREDERICK MOTZ,
Judges of the Panel.

FN* Judge Selya took no part in the decision
of this matter.

*TRANSFER ORDER*

HODGES, J.

*1 Now before the Panel are three Northern District
of California and Central District of Illinois actions in
which defendants (Maremont Corp., Inc., Center for
Claims Resolution, Inc. (CCR), Amchem Products,
Inc., C.E. Thurston & Sons, Inc., CertainTeed Corp.,
Dana Corp., Pfizer, Inc., Quigley Co., Inc., Shook &
Fletcher Insulation Co., T & N plc, and/or Union
Carbide Corp.) seek transfer of the actions, pursuant
to 28 U.S.C. § 1407, to the Eastern District of

Pennsylvania for inclusion in the centralized pretrial
proceedings occurring there in this docket before
Judge Charles R. Weiner. Plaintiffs in the three
actions all oppose transfer.

On the basis of the papers filed and hearing session
held, the Panel finds that these three actions involve
common questions of fact with actions in this
litigation previously transferred to the Eastern
District of Pennsylvania, and that transfer of the
actions to the Eastern District of Pennsylvania for
inclusion in the coordinated or consolidated pretrial
proceedings occurring in that district will serve the
convenience of the parties and witnesses and promote
the just and efficient conduct of the litigation. We
find that transfer of the actions is appropriate for
reasons expressed by the Panel in its original decision
in this docket directing centralization of all pending
federal court actions not then in trial involving
allegations of personal injury or wrongful death
caused by asbestos or asbestos containing products.
See In re Asbestos Products Liability Litigation (No.
VI), 771 F.Supp. 415 (J.P.M.L.1991). Plaintiffs seek
to exclude the three actions from transfer on the
ground that the actions do not specifically involve
claims of asbestos related injuries but rather simply
involve efforts to enforce contractual rights acquired
in state court settlements of asbestos personal injury
claims. Regardless of how plaintiffs seek to
characterize the nature of their complaints, the
actions all present the same key issue which is now
also present in actions in the transferee district:
whether asbestos personal injury settlement
agreements negotiated by CCR create joint or
separate liability for defendant companies that are
CCR members. Transfer is necessary in order to
prevent duplication of pretrial efforts, inconsistent
rulings, and waste of the transferee court's experience
and expertise. Transfer will also enhance Judge
Weiner's continuing efforts to manage the MDL-875
docket regarding such matters as the effect of
codefendant defaults on settlement efforts, settlement
funding, and proper claim sequencing. To any parties
that believe the uniqueness of their particular
situation renders inclusion of their action in MDL-
875 unnecessary or inadvisable, we note that
whenever the transferee judge deems remand of any
claims or actions appropriate, procedures are
available whereby this may be accomplished with a
minimum of delay. See Rule 7.6, R.P.J. P.M.L., 199
F.R.D. at 436-38. We are confident that Judge
Weiner will continue to promptly review arguments

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                    Page 2
**(Cite as: 2001 WL 1042562 (Jud.Pan.Mult.Lit.))**

for returning transferred actions or claims to their
transferor courts and will take all appropriate steps to
assure their speedy return whenever he is convinced
that retention in the MDL-875 proceedings is no
longer needed.

*2 IT IS THEREFORE ORDERED that, pursuant to
28 U.S.C. § 1407, these three actions are transferred
to the Eastern District of Pennsylvania and, with the
consent of that court, assigned to the Honorable
Charles R. Weiner for inclusion in the coordinated or
consolidated pretrial proceedings occurring there in
this docket.

2001 WL 1042562 (Jud.Pan.Mult.Lit.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
# 5

1996 WL 143826
(Cite as: 1996 WL 143826 (Jud.Pan.Mult.Lit.))

**H**
Only the Westlaw citation is currently available.

Judicial Panel on Multidistrict Litigation.

In re ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI).

No. 875.

Feb. 16, 1996.

*1 *Edgardo P. Gonzales v. Owens-Corning Fiberglas Corp., et al.*, N.D. California, C.A. No. 3:95-3705

*Nicandor San Juan v. Owens-Corning Fiberglas Corp., et al.*, N.D. California, C.A. No. 3:95-3709

*Catherine H. Simoneaux, et al. v. Exxon Corp., et al.*, M.D. Louisiana, C.A. No. 3:95-652

*Faye Carlson, etc. v. Anchor Packing Co., et al.*, D. Oregon, C.A. No. 3:95-1337

*Joseph R. Headley v. Anchor Packing Co., et al.*, D. Oregon, C.A. No. 3:95- 1543

Before JOHN F. NANGLE, Chairman, ROBERT R. MERHIGE, Jr., WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS [FN*] and LOUIS C. BECHTLE, Judges of the Panel.

TRANSFER ORDER

JOHN F. NANGLE, Chairman.

Presently before the Panel are motions, pursuant to Rule 12, R.P.J.P.M.L., 147 F.R.D. 589, 596 (1993), by plaintiffs in the five above-captioned N.D. California, M.D. Louisiana and D. Oregon actions requesting that the Panel vacate the portions of its orders conditionally transferring their respective action to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket before Judge Charles R. Weiner.

On the basis of the papers filed, [FN1] the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Pennsylvania, and that transfer of the actions to the Eastern District of Pennsylvania for inclusion in the coordinated or consolidated pretrial proceedings in that district will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. We find that transfer of these actions is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products. *See In re Asbestos Products Liability Litigation (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991). In particular, we note that in the Panel's original decision distinctions based on such matters as the pendency of motions or other matters before the transferor court, [FN2] the uniqueness of a party's status, the type of defendant, the docket condition of any specific federal district, the presence of unique or additional claims not relating to injury or death, and/or the unanimity of opposition to transfer by the parties to an action, were considered and rejected by the Panel as grounds for carving out exceptions to transfer in this extraordinary docket. We find no reason to depart from this approach in dealing with the question of transfer of the actions now before the Panel.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the five above- captioned actions be, and the same hereby are, transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Charles R. Weiner for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FN* Judge Sanders took no part in the decision of this matter.

FN1. The parties to the five actions waived oral argument and, accordingly, the question of Section 1407 transfer with respect to the actions was submitted on the briefs. Rule 17, R.P.J.P.M.L., 147 F.R.D. 589, 600-01 (1993).

FN2. The plaintiffs in the California and

1996 WL 143826
Page 2
(Cite as: 1996 WL 143826 (Jud.Pan.Mult.Lit.))

Oregon actions have argued that transfer should be denied or deferred in order to permit the judges assigned the actions to rule on motions to remand to state court. There is no need to delay transfer in order to accommodate such interests. We note that: 1) as a practical matter, there is a lag time of at least three or four months from the filing of an action, its identification as a potential tag-along action issuance of a conditional transfer order, stay of transfer when a party timely objects to the conditional transfer briefing on the question of transfer, the Panel hearing, and the issuance of the Panel's subsequent order 2) Panel Rule 18, R.P.J.P.M.L., *supra*, 147 F.R.D. at 601, expressly provides that the pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address such motions have adequate time in which to do so those courts concluding that such issues should be addressed by the transferee judge need not rule on them and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay

1996 WL 143826 (Jud.Pan.Mult.Lit.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
# 6

C

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

Cynthia M. AIKINS, Jacqueline Belfied, and Amber
Cisney, Individually and on
Behalf of all Persons Similarly Situated in the State
of Louisiana
v.
MICROSOFT CORPORATION

No. Civ.A.00-0242.

March 24, 2000.

MCNAMARA, J.

*1 Before the court are the following motions:

(1) "Motion to Remand" filed by Plaintiffs and
opposed by Defendant Microsoft; and

(2) "Motion to Stay All Proceedings Until the MDL
Panel Rules on Motions to Transfer this and Other
Actions Pursuant to 28 U.S.C. § 1407" filed by
Defendant and opposed by Plaintiffs.

The motions, set for hearing on March 22, 2000 are
before the court on briefs without oral argument.
Having considered the memoranda of counsel and the
applicable law, the court now rules.

BACKGROUND

The instant action is one of many cases filed against
Microsoft after findings of fact were issued in *United
States v. Microsoft* on November 5, 1999. Currently
there are motions by several parties in these cases
pending before the Judicial Panel on Multidistrict
Litigation ("JPML") for consolidation of all cases
against Microsoft.

The Defendant requests that this court exercise its
discretion and stay pretrial proceedings, including
determinations of jurisdictional issues, pending a
determination by the JPML. Plaintiffs oppose the
motion, assert that this court does not have

jurisdiction in this case and urge a remand.

ANALYSIS

The JPML is established under 28 U.S.C. § 1407.
The purpose of this statute is to permit the
centralization in one district of all pretrial
proceedings in civil actions involving one or more
common questions of fact pending in different
districts. [FN1] Further, the statute seeks to eliminate
potential conflicting rulings by coordinate district and
appellate judges. [FN2]

> FN1. *Matter of New York City Mun.*
> *Securities Litigation, 572 F.2d 49, 51-52* (2
> nd Cir.1978).

> FN2. *In re Air Crash Disaster off Long*
> *Island, N.Y. on July 17, 1996, 965 F.Supp.*
> *5, 7 (S.D.N.Y.1997).*

A pending motion before the JPML does not affect
the jurisdiction of the transferor court. [FN3]
However, courts have inherent power to "control the
disposition of the causes on its docket with economy
of time and effort for itself, for counsel, and for
litigants." [FN4]

> FN3. *In re Air Crash Disaster at Paris,*
> *France on March 3, 1974, 376 F.Supp. 887,*
> *888 (J.P.M.L.1974).*

> FN4. *Landis v. North American Co., 57*
> *S.Ct. 163, 166 (1936).*

Plaintiff asserts that this court lacks subject matter
jurisdiction and that jurisdictional issues should be
resolved prior to any other action. While generally
true, cases such as this require special consideration.

As stated previously, the purpose of the JPML is to
promote judicial economy and to prevent inconsistent
rulings. This case presents questions of fact similar to
the other actions pending before the JPML. Further,
the same jurisdictional questions raised here will
likely be raised in many of the other cases pending

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2000 WL 310391
(Cite as: 2000 WL 310391 (E.D.La.))

against Microsoft. Consistency and economy are both served by resolution of these issues by a single court after transfer by the JPML. [FN5] Should the Panel determine that consolidation of these cases is not warranted, Plaintiff may re-urge the motion.

> FN5. See *In re Ivy,* 901 F.2d 7, 9 (2d Cir.1990); *Weinke v. Microsoft Corporation,* 2000 WL 220496 (E.D.Wis.1999); *Boudreaux v. Metropolitan Life Ins. Co.,* 1995 WL 83788 at *2, (E.D.La.1995); *In re Professional Hockey Antitrust Litigation,* 369 F.Supp. 1117, 1118 (J.P.M.L.1974); *In re Air Crash Disaster at Juneau Alaska,* 360 F.Supp. 1406 (J.P.M.L.1973).

Courts consider the following factors in deciding whether a stay of the proceedings is appropriate: 1) hardship and inequity on the moving party without a stay; 2) prejudice the non-moving party will suffer if a stay is granted; and 3) judicial economy. [FN6]

> FN6. See *Rivers v. Walt Disney Co.,* 980 F.Supp. 1358, 1360 (C.D.Cal.1997); See generally *Arthur-Magna, Inc. v. Del-Val Financial Corp.,* 1991 WL 13725 (D.N.J.1991); *Boudreaux v. Metropolitan Life Ins. Co.,* 1995 WL 83788 (E.D.La.1995).

First, Microsoft would suffer a considerable hardship and inequity if forced to simultaneously litigate multiple suits in multiple courts. Further, they could potentially suffer conflicting rulings by different judges in these multiple suits. Second, Plaintiffs have failed to show any significant prejudice they would suffer, beyond the slight delay pending the JPML decision. Finally, the interests of judicial economy would best be served by granting a stay.

*2 Accordingly;

IT IS ORDERED that further proceedings in this case are STAYED pending the decision on consolidation and transfer by the JPML.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Remand is DENIED at this time and may be re-urged if necessary after the decision of the JPML.

2000 WL 310391, 2000 WL 310391 (E.D.La.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
## 7

Westlaw.

2000 WL 462919                                                    Page 1
2000-1 Trade Cases P 72,885
(Cite as: 2000 WL 462919 (E.D.La.))

▷

United States District Court, E.D. Louisiana.

Clair FALGOUST, et al.
v.
MICROSOFT CORPORATION

No. CIV.A.00-0779.

April 19, 2000.

MCNAMARA, Chief J.

*1 Before the court are the following motions:

(1) "Motion to Remand" filed by Plaintiffs and opposed by Defendant Microsoft; and

(2) "Motion to Stay All Proceedings Until the MDL Panel Rules on Motions to Transfer this and Other Actions Pursuant to 28 U.S.C. § 1407" filed by Defendant and opposed by Plaintiffs.

The motions, set for hearing on April 19, 2000, are before the court on briefs without oral argument. Having considered the memoranda of counsel and the applicable law, the court now rules.

BACKGROUND

The instant action is one of many cases filed against Microsoft after findings of fact were issued in *United States v. Microsoft* on November 5, 1999. Currently, there are motions by several parties in these cases pending before the Judicial Panel on Multidistrict Litigation ("JPML") for consolidation of all cases against Microsoft.

The Defendant requests that this court exercise its discretion and stay pretrial proceedings, including determinations of jurisdictional issues, pending a determination by the JPML. Plaintiffs oppose the motion, and urge this court to deny the stay, determine that jurisdiction is lacking and remand the case to state court.

ANALYSIS

The JPML is established under 28 U.S.C. § 1407. The purpose of this statute is to permit the centralization in one district of all pretrial proceedings in civil actions involving one or more common questions of fact pending in different districts. [FN1] Further, the statute seeks to eliminate potential conflicting rulings by coordinate district and appellate judges. [FN2]

> FN1. *Matter of New York City Mun. Securities Litigation,* 572 F.2d 49, 51-52 (2nd Cir.1978).

> FN2. *In re Air Crash Disaster off Long Island, N.Y. on July 17, 1996,* 965 F.Supp. 5, 7 (S.D.N.Y.1997).

A pending motion before the JPML does not affect the jurisdiction of the transferor court. [FN3] However, courts have inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." [FN4]

> FN3. *In re Air Crash Disaster at Paris, France on March 3, 1974,* 376 F.Supp. 887, 888 (J.P.M.L.1974).

> FN4. *Landis v. North American Co.,* 57 S.Ct. 163, 166 (1936).

Plaintiffs assert that this court lacks subject matter jurisdiction and that jurisdictional issues should be resolved prior to any other action. While generally true, cases such as this require special consideration.

As stated previously, the purpose of the JPML is to promote judicial economy and to prevent inconsistent rulings. This case presents questions of fact similar to the other actions pending before the JPML. Additionally, the same jurisdictional question raised in this case has been raised before this court in another case against Microsoft, and will likely be raised in many of the other cases pending against Microsoft in other districts.

In support of their opposition, Plaintiffs have

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

included a letter from the JPML to Judge Fallon regarding *Tramonte v. Chrysler Corp.* [FN5] where a motion to transfer was pending before the JPML and a motion to remand was pending before Judge Fallon. Plaintiffs quote a sentence from the letter which states "In the Panel's experience, such motions to remand to state court often involve questions unique to an action that are well suited for decisions prior to the 1407 transfer." While in *Tramonte* there were unique questions to be considered regarding jurisdiction, this is not the case here. As previously stated, this exact issue was presented to this court in another action against Microsoft, and will surely be an issue in many of the other cases pending against Microsoft in other districts.

FN5. Civil Action No. 95-2109 (E.D. La. June 28, 1999).

*2 Plaintiffs also cite *Panama v. American Tobacco Co.*, [FN6] in support of their position, and assert that "the facts of this case closely mirror those in *Panama*." Plaintiffs' reliance on *Panama* is misplaced. Procedurally, the two cases are similar in that defendants in both cases filed motions to stay pending a decision by the JPML, and plaintiffs in both cases filed motions to remand. However, the court in *Panama* noted that not all defendants joined in the motion to transfer and consolidate with the JPML and that there was the likelihood that the JPML "may not accept this case." [FN7]

FN6. 1999 WL 350030 (E.D.La.1999).

FN7. *Id.* at n2.

Plaintiffs assert that the JPML "does not have the power to consider the propriety of coordinated or consolidated pretrial proceedings in state court actions." [FN8] However, once removed, federal courts have jurisdiction to determine jurisdiction, the JPML has the power to transfer cases with motions to remand pending, and the district courts have discretion to stay actions pending decisions of the JPML even where jurisdictional questions exist.

FN8. See Plaintiffs' Memorandum in Opposition at p. 5.

The Second Circuit determined that the JPML does have jurisdiction to transfer a case even where a jurisdictional objection is pending. [FN9] In *Weinke v. Microsoft,* this same issue was presented to the district court. In that case, the court exercised its jurisdiction and stayed the action pending a decision by the JPML. [FN10]

FN9. See *In re Ivy,* 901 F.2d 7, 9 (2d Cir.1990).

FN10. 2000 WL 220496 (E.D.Wis.1999).

In *Boudreaux v. Metropolitan Life Ins. Co.,* the court stated that "[t]he transferee judge 'certainly has the power to determine the question of remand,' and if remand issues are common to many of [these cases], decisions by the transferee judge would avoid 'duplicative discovery and conflicting pretrial rulings.' " [FN11] Other cases have come to this same conclusion. [FN12]

FN11. 1995 WL 83788 at *2, (E.D.La.1995)(quoting *In re Air Crash Disaster at Florida,* 368 F.Supp. 812, 813 (J.P.M.L.1973)).

FN12. *In re Professional Hockey Antitrust Litigation,* 369 F.Supp. 1117, 1118 (J.P.M.L.1974); *In re Air Crash Disaster at Juneau Alaska,* 360 F.Supp. 1406 (J.P.M.L.1973).

In all of these cases the courts determined that consistency and economy would be served by resolution of these issues by a single court after transfer by the JPML. The same is true in this case. In the event that the Panel determines that consolidation of these cases is not warranted, Plaintiff may re-urge the motion.

Courts consider the following factors in deciding whether a stay of the proceedings is appropriate: 1) hardship and inequity on the moving party without a stay; 2) prejudice the non-moving party will suffer if a stay is granted; and 3) judicial economy. [FN13]

2000 WL 462919
2000-1 Trade Cases P 72,885
(Cite as: 2000 WL 462919 (E.D.La.))

Page 3

FN13. See *Rivers v. Walt Disney Co., 980
F.Supp. 1358, 1360 (C.D.Cal.1997)*; See
generally *Arthur-Magna, Inc. v. Del-Val
Financial Corp., 1991 WL 13725
(D.N.J.1991)*; *Boudreaux v. Metropolitan
Life Ins. Co., 1995 WL 83788
(E.D.La.1995)*.

First, Microsoft would suffer a considerable hardship
and inequity if forced to simultaneously litigate
multiple suits in multiple courts. Further, they could
potentially suffer conflicting rulings by different
judges in these multiple suits. Second, Plaintiffs have
failed to show any significant prejudice they would
suffer, beyond the slight delay pending the JPML
decision. Finally, the interests of judicial economy
would best be served by granting a stay.

Accordingly;

IT IS ORDERED that further proceedings in this
case are STAYED pending the decision on
consolidation and transfer by the JPML.

*3 IT IS FURTHER ORDERED that Plaintiffs'
Motion to Remand is DENIED at this time and may
be re-urged if necessary after the decision of the
JPML.

2000 WL 462919, 2000 WL 462919 (E.D.La.), 2000-
1 Trade Cases P 72,885

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
# 8

Westlaw.

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22025158 (C.D.Cal.))

Page 1

▷
Only the Westlaw citation is currently available.

United States District Court,
C.D. California, Southern Division.

PACIFIC LIFE INSURANCE CO., et al., Plaintiffs,
v.
J.P. MORGAN CHASE & CO., et al., Defendants.

No. SA CV 03-813GLT(ANX).

June 30, 2003.

Investors that bought Chapter 11 debtor's bonds prepetition brought state- court action against companies that underwrote or audited debtor's public offerings. After companies removed action, investors moved for remand and companies moved for stay pending ruling by multidistrict litigation panel on their request for transfer of case for consolidated pretrial proceedings with other actions involving debtor. The District Court, Taylor, J., held that: (1) district court had removal jurisdiction under statute providing for removal of claims related to bankruptcy cases; (2) Securities Act did not bar removal of claim based on court's "related to" jurisdiction; (3) remand was not warranted on equitable grounds; and (4) stay was warranted.

Motion for stay granted; motion for remand denied.

[1] Bankruptcy ☜2053

51k2053

[1] Bankruptcy ☜2088
51k2088

When investors' state-court action against companies that underwrote or audited debtor's public offerings was removed, it was conceivable that outcome of litigation could affect Chapter 11 estate, given companies' purported entitlement to indemnification or contribution from debtor, pursuant to written agreements, for liabilities arising from allegedly false and misleading statements in documents related to

bond offerings underlying investors' claims, and therefore action was "related to" debtor's bankruptcy case, giving district court removal jurisdiction. 28 U.S.C.A. § § 1334(b), 1452(a).

[2] Bankruptcy ☜2088
51k2088

Provision of Securities Act barring removal of state-court case arising under Act did not bar removal of securities claim based on "related to" jurisdiction under statute providing for removal of claims related to bankruptcy cases. Securities Act of 1933, § § 11, 22(a), 15 U.S.C.A. § § 77k, 77v(a); 28 U.S.C.A. § 1452.

[3] Federal Courts ☜47.5
170Bk47.5

Statute allowing district court to abstain from hearing proceeding in bankruptcy case does not apply to removal cases. 28 U.S.C.A. § 1334(c)(1).

[4] Bankruptcy ☜2091
51k2091

Remand of investors' "related to" action against companies that underwrote or audited Chapter 11 debtor's public offerings was not warranted on equitable grounds when investors alleged both federal- and state-law claims, inasmuch as state and federal courts were equally suitable forums to hear such claims, and possible transfer of case to multidistrict litigation panel for consolidated pretrial hearing, along with coordination and efficiency that such transfer would provide, favored retention of federal jurisdiction. 28 U.S.C.A. § 1452(b).

[5] Bankruptcy ☜2368
51k2368

Stay of proceedings on investors' "related to" action against companies that underwrote or audited Chapter 11 debtor's public offerings was warranted pending ruling by multidistrict litigation panel on companies' request for transfer of case for consolidated pretrial proceedings with other actions involving debtor, in that stay would conserve judicial resources and avoid duplication of pretrial efforts in the event panel accepted transfer request, and was not opposed by investors.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22025158 (C.D.Cal.))

ORDER DENYING PLAINTIFFS' MOTION FOR
REMAND AND GRANTING DEFENDANTS'
MOTION FOR
STAY

TAYLOR, J.

Calendar Item # 14

*1 Plaintiffs' motion for remand is DENIED.
Defendants' motion for stay is GRANTED.

I. BACKGROUND

Plaintiffs purchased WorldCom bonds between 1998
and 2002. Defendants underwrote and/or audited
WorldCom's public offerings. In July 2002,
WorldCom filed a voluntary petition for Chapter 11
bankruptcy relief in the Southern District of New
York. Defendants filed proofs of claims in
WorldCom's bankruptcy action, claiming rights of
indemnity and contribution based on written
agreements. In October 2002, the Multi-District
Litigation Panel ("MDL Panel") transferred
numerous WorldCom-related suits to the Southern
District of New York for consolidated pre-trial
proceedings.

In April 2003, Plaintiffs sued Defendants in the
Orange County Superior Court, alleging claims under
federal and state law. Plaintiffs claim they relied on
representations made by Defendants concerning
WorldCom's creditworthiness when they purchased
WorldCom bonds. Plaintiffs allege they suffered
significant financial losses in reliance on Defendants'
allegedly false and misleading statements. In May
2003, Defendants timely removed the case to federal
court, and requested the MDL Panel accept the case
for consolidated pre-trial proceedings with other
WorldCom actions.

Defendants move to stay of the proceedings until 30
days after the MDL Panel rules on Defendants'
transfer request. Plaintiffs move for remand to the
state court.

II. DISCUSSION

Requests for transfer pending before the MDL Panel
do not limit the pre-trial jurisdiction of the district
court. _Smith v. Mail Boxes, Etc. USA, Inc., 191
F.Supp.2d 1155, 1157 (E.D.Cal.2002)_ (citing _Judicial
Panel on Multidistrict Litigation Rule 1.5_). The Court
has discretion to decide whether to stay a case
pending a decision from the MDL Panel. _Id._

Plaintiffs' motion for remand raises questions as to
the Court's jurisdiction, a preliminary issue that
should be resolved early in the case. _Id._ (collecting
cases). Thus, the Court addresses Plaintiffs' motion
for remand before considering Defendants' motion
for stay.

A. _Plaintiffs' Motion for Remand_

Plaintiffs contend the Court does not have
jurisdiction over the case because, contrary to
Defendants' assertion in the notice of removal,
Plaintiffs' case is not related to the WorldCom
bankruptcy proceedings. Plaintiffs also contend
section 22(a) of the Securities Act of 1933 bars
removal of their Securities Act claim. Plaintiffs also
request the Court abstain or remand the action on
equitable grounds.

1. _"Related To" Bankruptcy Proceedings_

[1] 28 U.S.C. section 1452(a) provides for removal
of claims related to bankruptcy cases to a federal
district court, "if such district court has jurisdiction of
such claim or cause of action under section 1334 of
this title." Section 1334(b) provides district courts
have original jurisdiction over "all civil proceedings
arising under title 11, or arising in or related to cases
under title 11." 28 U.S.C. § 1334(b).

In the Ninth Circuit, a case is "related to" a
bankruptcy proceeding if " 'the outcome of the
proceeding could conceivably have any effect on the
estate being administered in bankruptcy.' " _In re
Feitz, 852 F.2d 455, 457 (9th Cir.1988)_ (quoting
_Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd
Cir.1984)_). Contingent claims of contribution and
indemnification such as those raised by Defendants
may be sufficient to invoke "related to" jurisdiction,
even if Defendants are not guaranteed
indemnification. _See In re Down Corning, Corp., 86
F.3d 482, 490 (6th Cir.1996); In re Sizzler
Restaurants Int'l, Inc., 262 B.R. 811, 818–819
(Bankr.C.D.Cal.2001)._ [FN1] If Defendants are
found liable in this case, they may be entitled to
indemnification and/or contribution from WorldCom.
Thus, it is conceivable the present action may have
an effect on the WorldCom bankruptcy estate.

> FN1. Plaintiffs cite _Pacor, Inc. v. Higgins,
> 743 F.2d 984, 994 (3rd Cir.1984)_, for the
> proposition an indemnification claim is
> insufficient to invoke "related to"
> jurisdiction. In _Pacor_, the Court found an
> indemnification claim to be insufficient for

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d

Page 3

(Cite as: 2003 WL 22025158 (C.D.Cal.))

"related to" jurisdiction *in the absence of a* written agreement with the debtor. *Id.* at 995. However, the Court went on to distinguish the case from those in which an indemnification agreement existed and concluded "related to" jurisdiction would be present in those cases. Here, Defendants have written indemnification agreements with WorldCom for liabilities arising from false or misleading statements contained in registration statements or prospectus related to bond offerings. Allegedly false and misleading statements in such documents serve as the basis for Plaintiffs' state and federal claims.

Plaintiffs contend Defendants' indemnification and contribution claims will not have any practical effect on the bankruptcy estate. According to Plaintiffs, Defendants cannot receive any distribution under a Reorganization Plan proposed in the WorldCom bankruptcy action. Removal jurisdiction is determined at the time of removal. The Reorganization Plan has not yet been approved. Thus, at the time of removal, it was conceivable the outcome of this litigation may affect the WorldCom bankruptcy estate. [FN2]

> FN2. Plaintiffs argue Defendants' indemnification and contribution claims against WorldCom are unenforceable. This argument invites the Court to rule or speculate on the merits of Defendants' claims against WorldCom. The Court declines to do so.

*2 This case is "related to" the WorldCom bankruptcy action, and the Court has removal jurisdiction under 28 U.S.C. section 1452.

*2. Section 22(a) of the Securities Act of 1933*

[2] Plaintiffs allege a claim against Defendants under section 11 of the Securities Act of 1933. Plaintiffs contend removal of this claim is barred by section 22(a) of the Securities Act of 1933, which provides in part, "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a).

Section 22(a) proscribes removal based on federal question jurisdiction under 28 U.S.C. section

1441(a), but does not prevent removal based on other grounds. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1196 (9th Cir.1988) (finding section 22(a) prevents removal under section 1441(a), but not under 1441(c)); *In re WorldCom*, 293 B.R. 308, 2003 WL 716243 (S.D.N.Y.2003) (finding section 22(a) does not prevent removal based on "related to" jurisdiction under 28 U.S.C. section 1452); *Retirement Systems of Alabama v. Merrill Lynch & Co.*, 209 F.Supp.2d 1257, 1260, nt.3 (M.D.Ala.2002) (stating removal jurisdiction was available under section 1452 even though section 22(a) prevented removal on federal question grounds). *But see Tennessee Consolidated Retirement System v. Citigroup, Inc.*, No. 3:03-0218, *slip op.* at 6 (M.D.Tenn., May 9, 2003) (holding section 22(a) prevents removal under section 1452).

Here, removal was not based on federal question jurisdiction under 28 U.S.C. section 1441(a), but on "related to" jurisdiction under section 1452. Thus, removal was not barred by section 22(a).

*3. Abstention and Equitable Remand*

[3] Plaintiffs request the Court to abstain from exercising jurisdiction "in the interest of justice," pursuant to 28 U.S.C. § 1334(c)(1). Section 1334 abstention does not apply to removal cases. *McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.*, 285 B.R. 460, 475 (D.Or.200) (citing *Security Farms v. International Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009-10 (9th Cir.1997)).

[4] Plaintiffs also request remand pursuant to 28 U.S.C. section 1452(b), which permits remand on "any equitable ground." They contend the case involves predominately state claims. Section 1452(b) has been understood to permit remand based on general fairness and reasonableness considerations. *See Christie v. Chong*, 2002 WL 598428 (N.D.Cal.2002) (collecting cases). However, Plaintiffs allege both federal and state claims, and the state and federal courts are equally suitable forums to hear these claims. Possible transfer to the MDL Panel for consolidated pre-trial hearing and the coordination and efficiency such a transfer would provide weigh in favor of retaining federal jurisdiction.

Plaintiffs' motion for remand is DENIED.

*B. Defendants' Motion for Stay*

[5] The Court has the authority to stay proceedings

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 22025158 (C.D.Cal.))

to control its docket and for judicial economy considerations. *See Smith, 191 F.Supp.2d at 1157.* Defendants contend a stay will conserve judicial resources and avoid duplication of pre-trial efforts in the event the MDL Panel accepts the transfer request. Plaintiffs do not oppose a stay of the proceedings if the Court first rules on the motion for remand, which the Court has denied.

**\*3** Defendants' motion for stay is GRANTED.

### III. *DISPOSITION*

Plaintiffs' motion for remand is DENIED. Defendants' motion for stay pending a decision from the MDL Panel is GRANTED.

2003 WL 22025158 (C.D.Cal.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
# 9

Not Reported in F.Supp.2d                                                      Page 1
(Cite as: 2003 WL 22251079 (N.D.Tex.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas, Dallas Division.

Carol CANTRELL, et al., Plaintiff,
v.
WYETH and Stella Kwong, M.D., Defendants.

No. Civ.A. 303CV1659G.

Sept. 19, 2003.

*MEMORANDUM ORDER*

FISH, Chief J.

*1 Before the court is the plaintiffs' motion to remand, filed August 14, 2003, and the defendant Wyeth's motion to stay all proceedings pending transfer, filed July 22, 2003. This court heard arguments on both motions at a hearing on September 2, 2003. Having considered the motions, the responses thereto, and the applicable law, the court concludes that the plaintiffs' motion to remand should be denied and that Wyeth's motion to stay should be granted.

**I. BACKGROUND**

Plaintiffs Carol Cantrell ("Cantrell"), Dorothy Berlin, Jeanie Caswell, Peggy Newman, and Betty Smith, all Texas citizens, seek damages from the defendant Wyeth ("Wyeth") for injuries they claim to have suffered as a result of the using the prescription diet drugs fenfluramine ("Pondimin") and dexfenfluramine ("Redux") formerly distributed by Wyeth. *See* Plaintiff's First Amended Petition ("Petition") ¶¶ 10-18, *located in* Index of State Court Documents, Tab 3. Wyeth is a Delaware corporation with its principal place of business in New Jersey. *See* Defendant Wyeth's Notice of Removal ("Notice of Removal") at 2. Cantrell also sues her prescribing physician, Dr. Stella Kwong ("Kwong"), a Texas citizen, for medical negligence, fraud, and fraudulent concealment. *See* Petition ¶¶ 6, 61-73. The plaintiffs instituted this action Texas on May 27, 2003 in a district court of Dallas County.

Wyeth removed the case to this court on July 22, 2003, alleging that Kwong was fraudulently joined to prevent removal. Notice of Removal at 3. Wyeth contends that Kwong's joinder is fraudulent because any possible cause of action against her is barred by the applicable statute of limitations. *Id.* at 4 (citing Tex.Rev.Civ. Stat. Art. 4590i, § 10.01 (Vernon Supp.2003)). Wyeth asserts that this case is one over which this court has subject matter jurisdiction (under 28 U.S.C. § 1332) and which may be removed (pursuant to 28 U.S.C. § 1441(b)) because "excluding the fraudulently joined defendant [Kwong], it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." Notice of Removal at 2.

On July 22, 2003, Wyeth also filed a motion to stay all proceedings pending transfer of this case by the Judicial Panel on Multi-District Litigation ("JPMDL") for coordinated or consolidated pretrial proceedings with *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D.Pa.). Similar cases have been consolidated before the Honorable Harvey Bartle, III, in the United States District Court for the Eastern District of Pennsylvania, to promote judicial efficiency and to avoid inconsistent rulings on recurring issues. See, *e.g., McKelvy v. Wyeth, et al., 2003 WL 21750952, at *1 (N.D.Tex. Jul. 8, 2003); McCurdy v. Wyeth, et al.,* Case No. A-03-CA-054-SS, at 9 (W.D.Tex., Feb. 14, 2003), *attached to* Notice of Removal as Exhibit 55. Wyeth has notified JPMDL of the existence of this case. [FN1] Motion to Stay at 2.

> FN1. This court retains jurisdiction despite the fact that the JPMDL issued a Conditional Transfer Order ("CTO") on September 8, 2003. The CTO does not become effective until it is filed with the clerk of the transferee court; moreover, the order is not transmitted to that clerk until "fifteen (15) days from the entry thereof." Thus, the CTO does not become effective, by its terms, until September 23, 2003.

*2 On August 14, 2003, the plaintiffs filed a motion to remand this case to the state court. They contend

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                    Page 2
(Cite as: 2003 WL 22251079 (N.D.Tex.))

that Kwong is properly named as a defendant because (1) at least some of Kwong's conduct occurred within the limitations period, and (2) exceptions to the Texas statute of limitations apply in this case. Motion to Remand at 1-2.

## II. ANALYSIS
### A. The Legal Standard

The primary issue before the court is whether Kwong was fraudulently joined to defeat diversity jurisdiction in this case. To establish that Kwong was fraudulently joined, Wyeth bears the burden of showing that "there is no reasonable basis for predicting that the plaintiff might establish liability ... against the in-state defendant." *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 390 (5th Cir.2000) ("*Badon I*"); *op. after certified question denied*, 236 F.3d 282, 286 n. 4 (5th Cir.2000) ("*Badon II*") (holding that, to preclude a finding of fraudulent joinder, there must be "arguably a reasonable basis" for predicting that state law would allow recovery). [FN2] District courts may "pierce the pleadings" and utilize summary judgment-like procedures to determine fraudulent joinder. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir.2003). Nevertheless, in evaluating Wyeth's assertion of fraudulent joinder, any unchallenged or contested issues of fact and any ambiguities of state law must be resolved in the plaintiffs' favor. See *id.*

> FN2. Citing *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992), the plaintiffs assert that "any possibility" of recovery against Kwong suffices to defeat a claim of fraudulent joinder. See Plaintiffs' Memorandum in Support of Motion to Remand at 5. Plaintiffs are, however, only half-correct. They wholly ignore Fifth Circuit precedent requiring that the possibility have a reasonable basis. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002). See also *Badon II*, 236 F.3d 282, 286 n. 4 (rejecting plaintiff's assertion that any mere theoretical possibility of recovery under local law, no matter how remote or fanciful, suffices to preclude removal).

### B. Statute of Limitations

Both Wyeth and Kwong contend there is no reasonable possibility that Cantrell could succeed in her medical negligence, fraud, and fraudulent concealment claims against Kwong because those claims are barred by the statute of limitations. See Defendant Wyeth's Response in Opposition to Plaintiff's Motion to Remand ("Response to Remand") at 3; Defendant Stella Kwong, M.D.'s Original Answer and Request for Jury Trial at 6-10. Although the last date of treatment was October 2000, Response to Remand, Ex. 1, the parties disagree as to whether Kwong's duty as Cantrell's physician extended beyond that date.

In Texas, medical malpractice claims are governed by the Medical Liability and Insurance Improvement Act ("the Act" or "Art. 4590i"). Tex.Rev.Civ. Stat. Art. 4590i, § 10.01 (Vernon Supp.2003). Under the Act, all health care liability claims must be filed within "two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim ... is completed." *Id.* According to the Texas Supreme Court, the Act measures the limitations period for medical negligence claims from one of three dates: (1) the occurrence of the breach or tort, (2) the last date of the relevant course of treatment, or (3) the last date of the relevant hospitalization. See, *e.g.*, *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex.2001); *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex.1998). A plaintiff may not choose the most favorable of these categories: if the date of the alleged tort· is ascertainable, then the statute must run from that date. *Shah*, 67 S.W.3d at 841. Where the exact date the alleged tort occurred cannot be ascertained, the second category contemplates circumstances wherein the limitations period begins to run from the last date of treatment. *Id.* For example, in *Rowntree v. Hunsucker*, the Texas Supreme Court held that, where a patient brought a medical malpractice action against her doctor for failure to diagnose an occluded artery that caused a stroke, the statute began to run on the date of the patient's last visit to the doctor's office in which the doctor had the opportunity to breach his duty to perform an examination to detect the occluded artery. 833 S.W.2d 103, 108 (Tex.1992). See also *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987) (suggesting that Art. 4590i contemplates a situation wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment); *Bejarano v. Wyeth*, Case No. L-03-53, at 10 (S.D. Tex. June 27, 2003), *attached to* Response to Remand as Exhibit E (finding that physician's duty to patient-plaintiff ended on the last date of treatment, which is also when the doctor-patient relationship ended).

*3 Applying the reasoning in *Rowntree*, this court concludes, as a matter of law, that Kwong's duty to

Not Reported in F.Supp.2d                                                                                   Page 3
(Cite as: 2003 WL 22251079 (N.D.Tex.))

Cantrell ended on the date of her last examination in October 2000. Having reviewed the plaintiffs' amended petition and their memorandum in support of the motion to remand, the court cannot determine the exact date that the alleged torts occurred. [FN3] Nevertheless, Kwong could have breached her duty to Cantrell only during the existence of the doctor-patient relationship, which ended with Cantrell's last visit to Kwong's office. See *Rowntree*, 833 S.W.2d at 108; *Kimball*, 741 S.W.2d at 372; *Bejarano v. Wyeth*, Case No. L-03-53, at 10. Viewing the facts in a light most favorable to Cantrell, this court finds that any breach or tort by Kwong must have occurred no later than October 2000. [FN4]

> FN3. Cantrell contends that Kwong failed to act as a reasonably prudent physician, fraudulently concealed the dangers of Pondimin and Redux, and breached a duty to warn Cantrell of the dangers of those drugs. Petition ¶¶ 61-73.

> FN4. The Texas Supreme Court has suggested that, when an injury has resulted from the taking of prescribed medications, "[t]here are some situations in which the statute would run from the date of the last drug treatment, if the course of that treatment is the direct cause of the injury." *Gross v. Kahanek*, 3 S.W.3d 518, 521 (Tex.1999) (quoting *Rowntree*, 833 S.W.2d at 105). Accordingly, Wyeth asserts, the statute begins running from the date of last drug treatment. Response to Remand at 3. The medical records provided by Wyeth indicate that Kwong last prescribed drugs to Cantrell in 1996. *Id.* Also, the plaintiffs' amended petition, ¶ 14, alleges that the diet drugs were removed from the market in September 1997. Given these facts, Wyeth argues that the statute of limitations expired in 1998, two years after the last drug treatment or, in the alternative, in 1999, two years after the drugs were removed from the market. Notwithstanding the seemingly supportive law and facts argued by Wyeth, this court must view both facts and law in favor of Cantrell as plaintiff, which means using the last *arguable* date from which the statute of limitations could run under Texas law--*i.e.*, October 2000.

Therefore, unless the statute of limitations is

extended by either the open courts provision of the Texas Constitution or the fraudulent concealment doctrine, Cantrell's claims against Kwong, first asserted in May 2003, are time-barred.

### 1. *The Open Courts Provision*

The plaintiffs assert that the open courts provision of the Texas Constitution permits them to maintain a malpractice action beyond the two-year statute of limitations. Plaintiffs' Memorandum in Support of Motion to Remand at 9 (citing Tex. Const., art. 1, § 13). They argue that Art. 4590i cuts off Cantrell's common law cause of action before she had "a reasonable opportunity to discover" the nature of her injury. *Id.* The defendants, in response, allege that Cantrell had ample opportunity to discover her injury and sue within the limitations period because her condition was not latent, and because overwhelming publicity put her on notice to visit her doctor. See Response to Remand at 4-13.

The Texas Constitution guarantees that people seeking redress for common-law injuries will not be unreasonably or arbitrarily denied access to the courts. See *Shah*, 67 S.W.3d at 841. "[O]ur Constitution's open courts provision protects a person from legislative acts that cut off a person's right to sue before there is a reasonable opportunity to discover the wrong and bring suit." *Id.* The open courts provision applies, however, "only if it would be impossible or exceedingly difficult to discover the injury" within the limitations period. *O'Reilly v. Wiseman*, 107 S.W.3d 699, 702 (Tex.App.-- Austin 2003, pet. denied). See also *Gagnier v. Wichelhaus*, 17 S.W.3d 739, 744 (Tex.App.--Houston [1st Dist.] 2000, pet. denied) ("[W]hen it is not possible for the plaintiff to discover the injury or wrong within the two-year period, the absolute two-year limitation has been held to be unconstitutional."). Even where the provision does apply, it tolls the two year limitation statute only until a plaintiff "knew or should have known that a cause of action existed." *Hellman v. Mateo*, 772 S.W.2d 64, 66 (Tex.1989).

For Cantrell's claim against Kwong to avoid the bar of limitations under the open courts provision, Cantrell has "to show that the nature of the claim was impossible or exceedingly difficult to discover and that she did not or could not have learned of the fact of injury within the two-year period." *O'Reilly*, 107 S.W.3d at 707. She has failed to make this showing. Indeed, Wyeth's evidence indicates that Cantrell, in the exercise of reasonable diligence, should have known more than two years before she filed this suit that the diet drugs about which she complains in this

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                        Page 4
(Cite as: 2003 WL 22251079 (N.D.Tex.))

case had been linked to heart valve problems. The extensive media coverage surrounding the diet drugs starting in September 1997 is more than sufficient to impute knowledge to Cantrell about her claims against Kwong. See *Moseley v. Wyeth,* Case No. CIV-02-1120-M, at 5 (W.D.Okla. Sept. 13, 2002), *attached to* Notice of Removal as Exhibit 56 (holding that the widespread publicity surrounding the fen-phen diet drugs from September 1997 through February 2000 was sufficient to put prospective plaintiffs on notice). Knowing she had taken the diet drugs prior to their removal from the market in 1997, and in light of the extensive publicity surrounding the diet drugs, Cantrell did not act reasonably in failing to heed multiple public warnings to seek a medical evaluation. See *McCurdy,* Case No. A-03-CA-054-SS, at 7 (holding that, "[u]pon learning [facts about the risks to fen-phen users of heart valve problems], a reasonable plaintiff would have heeded the warnings and visited her physician").

### 2. The Fraudulent Concealment Doctrine

*4 Cantrell maintains that the equitable doctrine of fraudulent concealment estops Kwong from relying on the statute of limitations. Plaintiffs' Memorandum in Support of Remand at 9-10. Cantrell alleges that Kwong fraudulently concealed the "dangers of Pondimin and Redux" and failed to advise her "to have a cardiovascular examination or echocardiogram." Petition ¶ ¶ 68, 73. Responding to these claims, Wyeth argues that Cantrell has not alleged sufficient facts to support a finding of fraudulent concealment. Notice of Removal 6-7.

Breach of a physician's duty, without more, does not constitute fraudulent concealment. See *Earle v. Ratliff,* 998 S.W.2d 882, 888 (Tex.1999). In *Earle,* the Texas Supreme Court held that although evidence that a doctor failed to remove a gauze sponge from inside the patient's body after surgery may have constituted negligence, failure to inform the patient of the sponge did not, by itself, constitute fraudulent concealment. *Id.* "[P]roof of fraudulent concealment requires more than evidence that the physician failed to use ordinary care; it also requires evidence that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Id.* See also *Shah,* 67 S.W.3d at 841 ("The plaintiff must show the health-care provider actually knew a wrong occurred, had a *fixed purpose to conceal the wrong,* and did conceal the wrong from the patient.") (emphasis added).

Cantrell, in a creative attempt to save her claim[s] from the statute of limitations, has attempted to burnish those claim[s] with the patina of fraudulent concealment. However, absent a showing that Kwong had actual knowledge of--and concealed--an injury, Cantrell's naked claims of medical negligence are plainly insufficient to demonstrate fraudulent concealment. See *Earle,* 998 S.W.2d at 888. Nowhere has Cantrell set forth factual allegations showing that Kwong had a fixed purpose to conceal from Cantrell--or acted affirmatively to prevent Cantrell from discovering--that she was injured as a result of taking the diet drugs. In her amended petition and her memorandum in support of the motion to remand, Cantrell simply makes conclusory allegations that Kwong fraudulently concealed both the dangers of Podimin and Redux and the need for Cantrell to undergo an echocardiogram or cardiovascular examinations. She fails, however, to provide any factual basis to support these allegations. Accordingly, the court--after piercing the pleadings to determine the question of fraudulent joinder--concludes that Cantrell has failed to carry her burden of showing that Kwong actually knew Cantrell was injured by the diet drugs in question, or that Kwong willfully concealed that fact in order to deceive Cantrell.

As set forth above, the court finds that Cantrell's claims against Kwong are barred by the statute of limitations, Tex.Rev.Civ. Stat. Art. 4590i, § 10.01, notwithstanding the equitable tolling doctrines relied on by Cantrell. Consequently, the court concludes that Kwong has been fraudulently joined, as there is no reasonable possibility that Cantrell will be able to establish a cause of action against her. In light of the conclusion that Kwong was fraudulently joined, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the case was properly removed under 28 U.S.C. § 1441(b).

### III. CONCLUSION

*5 For the foregoing reasons, the plaintiffs' motion to remand is DENIED, and Wyeth's motion to stay, pending transfer to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings with *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation,* MDL No. 1203 (E.D.Pa.), is GRANTED.

SO ORDERED.

2003 WL 22251079 (N.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
# 10

1995 WL 83788
(Cite as: 1995 WL 83788 (E.D.La.))

C

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana

CALVIN BOUDREAUX, et al.

v.

METROPOLITAN LIFE INS. CO., et al.

Civ. A. No. 95-138.

Feb. 24, 1995.

*ORDER GRANTING MOTION FOR A STAY*

<u>VANCE</u>, District Judge.

*1 This matter is before the Court on a motion by defendant Metropolitan Life Insurance Company ("Metropolitan") to stay the proceedings in this Court during the pendency of a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. Alternatively, Metropolitan seeks to continue the hearing on plaintiffs' motion to remand, which is presently scheduled for March 8, 1995. In connection with the requested continuance, Metropolitan seeks leave of court to conduct discovery on the issue of the subject matter jurisdiction of this Court and to propound in excess of twenty-five interrogatories. Because the Court finds that a stay of proceedings is appropriate, it does not reach defendant's alternative requests.

I. BACKGROUND

Plaintiffs are residents of Louisiana who filed a class action petition against Metropolitan, a New York corporation, and Dr. Samuel Logan, a resident of Louisiana, in state court on November 23, 1994. Plaintiffs are employees of Johns Manville Corporation at its Marrero, Louisiana plant, family members of such employees, or persons who lived in the vicinity of the Marrero plant in Marrero. Johns Manville's Marrero plant manufactures asbestos cement products, including pipe, building products and roofing materials. Plaintiffs allege injury from exposure to asbestos fibers as well as intentional concealment of the hazardous nature of asbestos fibers.

Defendant removed the case, asserting that this Court has diversity jurisdiction over the action because plaintiffs fraudulently joined Dr. Logan, the non-diverse defendant, and because plaintiffs seek damages of greater than $50,000. Plaintiffs filed a motion to remand the action to state court on January 24, 1995. On January 25, 1995, Metropolitan requested that the Judicial Panel on Multidistrict Litigation ("the Panel") transfer the case to the Eastern District of Pennsylvania, where multidistrict litigation is pending. A conditional transfer order was issued by the Panel on February 2, 1995.

Metropolitan now seeks a stay of the proceedings in this Court during the pendency of the Panel's conditional transfer order. Metropolitan asserts that the Pennsylvania district court has authority to rule on plaintiffs' motion to remand and, in fact, should decide the motion because similar issues could arise in other transferred cases. Alternatively, Metropolitan seeks to continue the hearing on the motion to remand presently scheduled for March 8, 1995 to permit discovery on the issues of fraudulent joinder of Dr. Logan and the amount in controversy as to all plaintiffs.

II. ANALYSIS

a. Stay of proceedings

The pendency of the transfer order does not in any way defeat or limit the authority of this Court to rule upon matters properly presented to it for decision. *In re Air Crash at Paris, France,* 376 F.Supp. 887 (JPML 1974). The decision whether to stay proceedings is discretionary, and the exercise of discretion is guided by the policies of justice and efficiency. *Id.; In re Ivy,* 901 F.2d 7, 9 (2d Cir.1990). *See also* H.R.Rep. No. 1130, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin. News 1898, 1900 ("It is expected that such transfer is to be ordered only where significant economy and efficiency in judicial administration may be obtained.").

*2 In this case, judicial economy would be served by a stay pending the transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the Eastern District of Pennsylvania. *In re Ivy,* 901 F.2d at 9. The transferee judge "certainly has the power to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1995 WL 83788
(Cite as: 1995 WL 83788 (E.D.La.))

determine the question of remand," and if the remand issues are common to many of the asbestos cases, decision by the transferee judge would avoid "duplicative discovery and conflicting pretrial rulings." *In re Air Crash Disaster at Florida,* 368 F.Supp. 812, 813 (JPML 1973).

In this case, Metropolitan challenges the joinder of the nondiverse defendant on the basis of prescription. Metropolitan claims that plaintiffs had knowledge of their claims against Dr. Logan prior to one year before filing this action so that there is no possibility that these plaintiffs could assert a timely claim against him. Issues of prescription are common in products liability cases such as this asbestos case. Since the physical effects of asbestos exposure can take years to manifest themselves, the threshold issue of timeliness arises frequently. *See Trizec Properties v. U.S. Mineral Products Co.,* 974 F.2d 602 (5th Cir.1992); George R. Murphy, *Asbestosis Litigation: Prescription, Contribution, Exposure, Insurance, and the Public Interest,* 54 La.L.Rev. 467 (1993).

Because the issue involved in this remand motion is likely to be common to other transferred cases, the policies of efficiency and consistency of pre- trial rulings are furthered by a stay of the proceedings in this Court pending a decision on the conditional transfer order. The Pennsylvania district court should determine the timeliness of claims for injury from exposure to asbestos, regardless of whether the issue arises on a motion to remand [FN1] or on the merits of the claim. Accordingly,

IT IS ORDERED that the motion to stay proceedings is GRANTED.

FN1. The timeliness of plaintiffs' claims against Dr. Logan is a factor in determining fraudulent joinder because a defendant claiming fraudulent joinder must show that there is *"no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812 (5th Cir.1993). Proof that plaintiffs' claims against Dr. Logan have prescribed is one method of establishing their inability to state a claim against him.

1995 WL 83788, 1995 WL 83788 (E.D.La.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT
# 11

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.))

**H**
Johnson v. AMR Corporation
N.D.Ill.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Spencer A. JOHNSON, et al., Plaintiffs,
v.
AMR CORPORATION, et al., Defendants.
Ronald LEWIS, et al., Plaintiffs,
v.
AMR CORPORATION, et al., Defendants.
Donald MERKEL, et al., Plaintiffs,
v.
AMR CORPORATION, et al., Defendants.
Michael A. PARKER, et al., Plaintiffs,
v.
AMR CORPORATION, et al., Defendants.
Cheryl L. PETERS, et al., Plaintiffs,
v.
AMR CORPORATION, et al., Defendants.
Ann STELLATO, et al., Plaintiffs,
v.
AMR CORPORATION, et al., Defendants.
Nos. 95 C 7659, to 95 C 7664.

April 3, 1996.

*MEMORANDUM OPINION AND ORDER*

ZAGEL, District Judge.
*1 The little black box that survived the impact of
the crash in Durham, North Carolina on 13 Decem-
ber 1995 records for posterity the last sounds from
the last seconds of American Eagle Flight 3379:

1833:33.3

HOT-1 why's that ignition light on? we just had a
flame out?

1833:38.4

HOT-2 I'm not sure what's goin' on with it.

1833:39.8

HOT-1 we had a flame out.

1833:40.7

CAM [low frequency beat sound similar to pro-
pellers rotating out of synchronization starts and
continues for approximately eight seconds]

1833:41.4

HOT-2 'K, you got it?

1833:42.5

HOT-1 yeah.

1833:42.8

HOT-2 we lose an engine?

1833:43.6

HOT-1 OK, yeah.

1833:45.2

HOT-1 OK, uh...

1833:46.0

HOT-2 I'm gonna turn that...

1833:46.5

HOT-1 see if that, turn on the auto...

1833:48.2

HOT-2 I'm goin' to turn on, both uh...ignitions, OK?

1833:51.5

HOT-1 OK.

1833:54.2

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.))

Page 2

HOT-2 we lose that en' left one?

1833:55.9

HOT-1 yeah.

1833:58.9 watta you want me to do you gonna continue?

1834:03.7

CAM [low frequency beat sound similar to propellers rotating out of synchronization starts and continues for approximately three seconds]

1834:05.3

CAM [sound similar to single stall warning horn starts and continues for 0.7 seconds]

1834:09.8

HOT-2 you got it?

1834:10.8

HOT-1 yeah.

1834:12.2

HOT-2 lower the nose.

1834:13.0

CAM [unidentified rattling sound]

1834:13.2

HOT-2 it's the wrong, wrong foot, wrong engine*.

1834:14.7

CAM [sound similar to dual stall warning horns stop]

1834:14.8

CAM [low frequency beat sound similar to pro-

pellers rotating out of synchronization starts and continues for approximately four seconds]

1834:14.9

CAM [sound similar to single stall warning horn stops]

1834:16.1

CAM [sound similar to dual stall warning horns start]

1834:16.3

HOT-B [sound of heavy breathing]

1834:17.6

CAM [sounds similar to dual stall warning horns stop and single horn continues]

1834:18.2

CAM [sound similar to dual stall warning horns start]

1834:18.9

HOT-2 here.

1834:24.4

CAM [sound of impact]

1834:24.6

END OF RECORDING

END OF TRANSCRIPT

End, tragically, of Flight 3379.

Five people survived both the impact and the ensuing fire which engulfed the Flagship Airlines Jetstream 3201 doing business that day as Flight 3379. Thirteen passengers and two crew members died. Since liability often follows hard upon the heels of tragedy, the incident ignited a spate of wrongful

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.))

Page 3

death suits filed by the survivors and the estates of the deceased passengers. Many of these suits were filed in the Cook County Circuit Court, rather than in federal court, because one of the named Defendants--Woodward Governor Company-- is a citizen of Illinois with Illinois also as its principal place of business.

*2 The other Defendants--AMR Corporation, Inc; American Airlines, Inc; AMR Eagle, Inc.; Flagship Airlines, Inc.; and Allied Signal Engines, Inc.--are not from Illinois. They are Delaware Corporations with their principal place of business in Texas. The presence among Defendants of Woodward Governor--an Illinois citizen for diversity purposes--affects the forum where these cases may be heard. In those cases not presenting federal questions under 28 U.S.C. 1331(a), a district judge has jurisdiction only over matters in controversy exceeding the value of $50,000 between "citizens of different States." 28 U.S.C. § 1332(a)(1).

*Jurisdictio est potestas de publico introducta cum necessitate juris dicendi.*That is, jurisdiction is a power introduced for the public good, on account of the necessity of dispensing justice. *Black's Law Dictionary* 853 (6th ed. 1990). Within the federal courts, jurisdiction is a concept of fundamental concern.*Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan,* 111 U.S. 379, 382 (1884). It is a question which a court "is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."*Id.*

Congress has taken specific measures to assure that the jurisdictional power of the federal court system is not squandered on cases which do not satisfy the specified requirements. The law looks askance at those who would subvert the intent of Congress "by naming as Defendants nominal parties with no discernible relationship to the cause of action."*Id.* citing 14A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3723, at 342 (1985). This attempt to destroy a federal court's diversity jurisdiction (and Defendants' right to removal) by suing non-diverse

parties actually has its own name: "fraudulent joinder."

Before 1992, the Seventh Circuit had "never before addressed fraudulent joinder." *Poulos & A.G.P. v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992). When it finally had occasion to, it explained that in matters concerning jurisdiction, "fraudulent" is a "term of art" for a set of circumstances that preclude Plaintiffs from any reasonable possibility of winning their claim in state courts. *Id.* Federal court "must engage in an action of prediction" about the chances of Plaintiffs' success. If Defendants fail to meet their "heavy burden" of proving there is not "any reasonable possibility" of Plaintiffs' winning, they have not proved fraudulent joinder, and the case must be remanded back to state court for want of diversity.

I am the second judge in the Northern District of Illinois who has heard Defendants plead that Plaintiffs' fraudulent joinder of one of them mandates removal to state court. The first was Judge Ann Claire Williams, my immediate neighbor in district court, who heard them in the summer of 1995. The arguments she heard then were identical to the ones I hear now.

But before Judge Williams or I heard Defendants plead fraudulent joinder in the Northern District of Illinois, these cases were entrusted to Judge Judith Cohen of the Circuit Court of Cook County. Judge Cohen, however, did not have them for long; Defendants removed the cases to Judge Williams. The Defendants do offer a slightly better case for fraudulent joinder. It would be a very much better case if one could consider the NTSB Final Aircraft Accident Report, but I doubt that one can so consider it. 42 U.S.C. § 761(e).

*3 A federal court must decline jurisdiction over cases or controversies where the Defendants and Plaintiffs share the same citizenship. 28 U.S.C. § 1332(a)(1).[FN1] This is exactly what Judge Williams did; she dismissed the cases for want of complete diversity,[FN2] unavoidably lobbing them once

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

again in the direction of Cook County.

Judge Cohen barely had them in her grasp again when Defendants moved to re-remove the cases back to federal court on 28 December 1995.

I fear that the tenacity of the parties and the nature of the federal diversity requirement have combined to make the judges of both state and federal governments unwilling participants in a game of judicial "Hot Potato," undignified because such goings-on insensitively denigrate the memory of whose loss of life was the catalyst for the present actions.

As if Judge Williams, Judge Cohen, and myself did not offer enough potential forums, the parties now argue that two judicial bodies--The Executive Committee and the Judicial Panel on Multidistrict Litigation (MDL)--have a crucial stake in the proceedings. Citing procedural irregularities in the re-filing of these cases in District Court,[FN3] Plaintiffs urged me to send these cases back to Judge Williams, or, failing that, to the Executive Committee (who they hope will then send the cases to Judge Williams after an investigation).*See* Plaintiffs' Emergency Motion for Assignment to the Calendar of the Executive Committee for Refiling and/or Reassignment and also their Motion to Remand.

No, say Defendants, what you must do is send the cases to the MDL. The MDL, after all, found centralization of Flight 3379 cases in the Middle District of North Carolina "desirable" to avoid duplication of discovery, inconsistent pretrial rulings, and the unnecessary depletion of the resources of all parties involved. *See* 28 U.S.C. § 1407. Acting on this finding, the seven experienced judges of the MDL issued a conditional Transfer Order on 20 December 1995 transferring to Judge Richard C. Erwin in the Middle District of North Carolina those cases involving "common questions of fact concerning the cause or causes of the December 13, 1994 crash of American Eagle Flight 3379 near Morrisville, North Carolina."[FN4] *Docket No. 1084, Conditional Transfer Order (CT0-2), Judicial Panel on Multidistrict litigation, In re Air Crash Near*

*Morrisville, North Carolina, on December 13, 1994, filed 26 January 1996.*

But is the MDL's authority to transfer these cases not impeded by the jurisdictional objections currently pending before me? No. *See In re Ivy,* 901 F.2d 7, 8-10 (2d Cir. 1990). The "sole issue" before the *Ivy* Court was "the merits of the transfer viewed against the purposes of the multidistrict statutory scheme, whether or not there is a pending jurisdictional objection."*Id.* at 9. After balancing these considerations, the *Ivy* Court upheld the MDL's "jurisdiction to transfer a case in which a jurisdictional objection is pending."*See also In re Federal Election Campaign Act Litigation,* 511 F. Supp. 821, 823-24 (J.P.M.L. 1979) (Panel transferred actions despite pendency of motions to dismiss for lack of subject matter jurisdiction). Sending these cases to the MDL is not mandatory. But the benefits of transferring them to the MDL--the body established by Congress specifically to ameliorate the duplicative litigation and the valuable waste of judicial resources--are obvious: "Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course."*Id.* at 9. The rewards of this approach are consistency and economy.

*4 This is where things stand at the moment with the cases before me: Defendants' brief in opposition to Plaintiffs' Motion to vacate the conditional transfer order is due to be filed on 14 March 1996 and the MDL Panel is expected to rule shortly thereafter. Judge Erwin, the MDL transferee judge, has postponed scheduling the first pretrial conference in the previously transferred cases until sometime prior to 1 June 1996 in order to give the MDL Panel an opportunity to rule on the transfer of these six additional cases.

Since the MDL will soon be looking at the forest as well as the trees, the best course is to postpone ruling on the present motions (damages discovery in these cases is ongoing, and will not be delayed, and no liability discovery has been taken) and allow the MDL panel to determine whether to make its condi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5
Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.))

tional order final. If the cases are transferred, it is far better for Judge Erwin to resolve the jurisdictional question.

I therefore stay any ruling on the instant motions until the Panel rules on the transfer issue. *See e.g.,* Stay Order entered by N.D. Texas in *Leech v. AMR Corp, et. al.,* No. 395-CV-2502-G.Hopefully, the MDL will be able to provide a fitting ending to the road tour of the long-running drama, "Six Cases in Search of a Forum."Prior to issuance of this opinion, I have tendered the draft to Judge Williams who has authorized me to say she concurs in this disposition.

> FN1. Moreover, Judge Williams recognized what some would not: in attempting to prove that the engines and propeller governors functioned perfectly on the day of the crash, Defendants mistakenly confused those facts which go to the merits with those facts which establish jurisdic- tion:

> The removing Defendants have missed the fine distinction between considering summary judgment-type evidence (which the court can do) and making a summary judgment-type determination (which it cannot).

> FN2.*See* Judge Williams' *Memorandum Opinion and Order of I 2 January 1995* at 12-13 ("In sum it is possible that a state court could find Woodward at least partly responsible for this air crash. Since a cause of action against Woodward might be sustained in a state court, there was no fraudulent joinder. Therefore, for the reasons set forth ... this cause, having been removed improvidently without jurisdiction is re- manded to the Circuit Court of Cook County.").

> FN3. Plaintiffs make much ado about what undoubtedly were procedural irregularities

in the re-filing of this case in district court. These cases may or may not have been mistakenly assigned to myself rather than Judge Williams, but all this is beside the point. Do not mistake me: the improper docketing and assignment of cases is a matter of no little consequence, and the court cannot remain impervious to evidence that nefarious motives adulterate the neutrality of the random case assignment system. But even if this court had the time, inclination, and resources to launch a full scale investigation, this would all still be not only beside the point, it would obscure the point, which is finding an appropriate forum for the prompt resolution of this dispute.

> FN4. This specifically included the six cases before me now.

N.D.Ill.,1996.
Johnson v. AMR Corporation
Not Reported in F.Supp., 1996 WL 164415 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT
# 12

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 1044923 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d, 1999 WL 1044923 (N.D.Ill.))**

C

Tench v. Jackson Nat. Life Ins. Co.

N.D.Ill.,1999.

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

Tisha S. TENCH, individually and on behalf of all others similarly situated, Plaintiff

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY and BROOKE LIFE INSURANCE COMPANY, Defendants.

No. 99 C 5182.

Nov. 12, 1999.

Marvin A. Miller, Miller, Faucher, Cafferty & Wexler LLP, Chicago, Howard D. Finkelstein, Finkelstein & Krinsk, San Diego, CA, Andrew S. Friedman, Bonnett, Fairbourn, Friedman & Balint, Phoenix, AZ, for Plaintiffs.

Joel S. Feldman, Sachnoff & Weaver, Ltd., Chicago, for Defendants.

MEMORANDUM OPINION AND ORDER

BUCKLO, District J.

**\*1** Tisha Tench, an Illinois citizen, filed a class action lawsuit on July 2, 1999, in the Circuit Court of Cook County, Illinois against defendants Jackson National Life Insurance Company and Brooke Life Insurance Company ("Jackson National") in connection with its marketing and sale of a life insurance policy referred to as a "vanishing premium" policy. Ms. Tench alleges that Jackson National is liable for (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and Uniform Deceptive Trade Practices Act, (2) negligent misrepresentation, (3) common law fraud, (4) breach of contract, and (5) breach of fiduciary duty.

On August 9, 1999, Jackson National removed Ms. Tench's case to federal court pursuant to 28 U.S.C. § 1441. The parties agree that diversity of citizen-

ship exists but dispute whether the amount in controversy meets the $75,000 requirement of diversity subject matter jurisdiction. Thus, Ms. Tench filed a motion to remand for lack of subject matter jurisdiction.

This case is one of many filed throughout the country based on the marketing and sale by life insurers of the so-called "vanishing premium" policies. The Judicial Panel for Multidistrict Litigation (the "MDL Panel") has, to date, consolidated four cases filed against Jackson National before the Honorable David McKeague of the United States District Court for the Western District of Michigan. The MDL Panel has set this case for hearing on November 19, 1999 on the issue of consolidation, and a transfer decision on another case is also pending. Jackson National has filed a motion to stay all proceedings pending the decision of the MDL Panel.

To further judicial economy and eliminate the potential for conflicting pretrial rulings, federal law permits the transfer of cases pending in different districts involving common questions of fact to the same district for consolidated pretrial proceedings. 28 U.S.C. § 1407(a). The MDL Panel is likely to transfer the case at bar, since it involves a nearly identical set of facts and similar legal theories as the cases previously consolidated before Judge McKeague. Under these circumstances, i.e. pending a decision by the MDL Panel whether to add a case, stays are frequently granted to avoid duplicative efforts and preserve valuable judicial resources.

The MDL Panel clearly has the authority to transfer this case despite Ms. Tench's jurisdictional objection. *See, e.g., In re Ivy,* 901 F.2d 7, 8-10 (2d Cir.1990)("Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course."); *In re Federal Election Campaign Act Litigation,* 511 F.Supp. 821, 823-24 (J.P.M.L.1979)(panel transferred actions despite pendency of motions to dismiss for lack of subject matter jurisdiction). In-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1044923 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 1044923 (N.D.Ill.))**

deed, as a court in this district has recognized, the benefits of transferring such cases "to the MDL-the body established by Congress specifically to ameliorate the duplicative litigation and the valuable waste of judicial resources-are obvious".*Johnson v. AMR Corp.,* 1996 WL 164415 (N.D.Ill.1996).

*2 Ms. Tench's proffer of snippets from an unrelated letter from the MDL Panel regarding a different case entirely is not an indication that the MDL Panel wants me to decide this issue immediately. Judge McKeague has been involved with the consolidated proceedings for over three years and is intimately familiar with many of the key facts which must be considered in a jurisdictional analysis. His experience will inform the question of jurisdiction and should not be wasted.[FN1] This issue may arise again in other actions against Jackson National, so resolution by Judge McKeague in a single forum will ensure consistency and avoid duplicative efforts.

> FN1. In this Circuit, calculation of the amount in controversy in a class action is no simple task, and is determined by aggregating the plaintiff's compensatory damages along with the plaintiff's pro rata share of attorneys fees, punitive damages, and the cost of injunctive relief to the defendant. *In re Brand Name Prescription Drugs,* 123 F.3d 599 (7th Cir.1997). Judge McKeague has more experience with the factual issues, including potential class size and valuation of the "vanishing premium" policies. The amount in controversy is most efficiently decided by the court who has managed similar proceedings with common issues of law and fact for over three years.

Since the MDL Panel will hear argument on this issue only a week from now, there will be no prejudice to Ms. Tench from undue delay nor will she be denied the opportunity to be heard on the issue of subject matter jurisdiction. A stay would be for only the limited period until the MDL Panel de-

cides whether to consolidate the instant action, then Ms. Tench may proceed with all of her desired motions. A stay is therefore the most appropriate option pending a final decision on transfer by the MDL Panel.

The defendants' motion to stay is GRANTED until the MDL Panel decides whether to transfer this case to the consolidated proceedings.

N.D.Ill.,1999.
Tench v. Jackson Nat. Life Ins. Co.
Not Reported in F.Supp.2d, 1999 WL 1044923 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT
# 13

Westlaw.

Not Reported in F.Supp.                                                                  Page 1
Not Reported in F.Supp., 1991 WL 13725 (D.N.J.)
**(Cite as: Not Reported in F.Supp., 1991 WL 13725 (D.N.J.))**

C
Arthur-Magna, Inc. v. Del-Val Financial Corp.
D.N.J.,1991.
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.
ARTHUR-MAGNA, INC., Plaintiff,
v.
DEL-VAL FINANCIAL CORPORATION, et al.,
Defendants.
**CIV.A. No. 90-4378.**

Feb. 1, 1991.

Andrew T. Berry, McCarter & English, Newark, N.J., for defendant Del-Val Financial Corporation, Melvin C. Garbow, Peter M. Kreindler, Kenneth V. Handal, Craig A. Newman, Jeffrey R. Mendelsohn, Arnold & Porter, New York City, of counsel.

Jody B. Keltz, Ross & Hardies, Somerset, N.J., for defendants Roger D. Stern, Martin Wright and Joel Zbar; Peter I. Livingston, Philip Goldstein, Ross & Hardies, New York City, of counsel.

Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for defendants Interstate/Johnson Lane and J. Craighill Redwine; Ann C. Flannery, Kevin T. Rover, John M. Vassos, Morgan, Lewis & Bockius, New York City, of counsel.

Kaplan & Kilsheimer, -and- I. Stephen Rabin, New York City for plaintiffs in *Rye, et al. v. Del-Val Financial Corp.,* Civil Action No. 90 Civ. 7207 (S.D.N.Y.).

Abbey & Ellis, New York City, for plaintiffs in *Amer v. Roger D. Stern, et al.,* Civil Action No. 90 Civ. 7028 (S.D.N.Y.).

Tenzer, Greenblatt, Fallon & Kaplan, New York City, -and- Morris, Rosenthal, Monhait & Gross P.A., Wilmington, Del., for plaintiffs in *Shirley Green Horowitz Revocable Trust, et al. v. Del-Val Financial Corp., et al.,* Civil Action No. 90-661 (D.Del.).

Goldstein, Till, Lite & Reifen, Newark, N.J., -and-Stull, Stull & Brody, New York City, for plaintiffs in *Howard Browner v. Del-Val Financial Corp., et al.,* Civil Action No. 90-4320 (D.N.J.) and *Nala*

*Management Corporation Profit Sharing Trust DTD 12-15-90 v. Del-Val Financial Corp.,* Civil Action No. 90-4630 (D.N.J.).

Kaplan Kilsheimer, New York City.

Catalano & Sparber, New York City, for defendants LW Industries and I & J. Wire Corp. in *Rita M. Cole, et al. v. Kenbee Management, Inc., et al.,* Civil Action No. 90 Civ. 7273 (S.D.N.Y.).

Herman Rogge, New York City, for defendant in *Rita M. Cole, et al. v. Kenbee Management, Inc., et al.,* Civil Action No. 90 Civ. 7273 (S.D.N.Y.).

Lowey, Dannenberg, Bemporad, Brachtl & Selinger, P.C., New York City, for plaintiffs in *Stanley Newman, et al. v. Roger D. Stern, et al.,* Civil Action No. 90 Civ. 6921 (S.D.N.Y.).

Frankel, Herdwick, Tannenbaum, Fink & Clark, Atlanta, Ga., for Elmon L. Vernier, Jr. in *Arthur-Magna, Inc. v. Del-Val Financial Corp., et al.,* Civil Action No. 90-4378 (D.N.J.).

Richard D. Greenfield, Mark C. Rifkin, Greenfield & Chimicles, Haverford, Pa., for plaintiff.

Andrew T. Berry, McCarter & English, Newark, N.J., for defendant Del-Val Financial Corporation.

*OPINION*

WOLIN, District Judge

\*1 Before the Court is a motion by defendants to temporarily stay all litigation pending resolution by the Judicial Panel on Multidistrict Litigation ("Jud. Panel Multidist. Lit.") of defendants' motion, pursuant to 28 U.S.C. § 1407, for multidistrict consolidation. For the following reasons, the Court will exercise its discretion in granting the motion.

On December 14, 1990 a motion was filed with the Panel by certain of the defendants seeking transfer of the actions to the Southern District of New York for consolidation of pretrial proceedings pursuant to 28 U.S.C. § 1407.

The power to stay proceedings is discretionary. The Supreme Court has described the power to stay proceedings as "incidental to the power inherent in

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 13725 (D.N.J.)
**(Cite as: Not Reported in F.Supp., 1991 WL 13725 (D.N.J.))**

every court to manage the schedule of cases on its docket to ensure fair and efficient adjudication." *Gold v. Johns Manville Sales Corp.,* 723 F.2d 1068, 1077 (3rd Cir.1983) (citing *Landis v. North America Co.,* 299 U.S. 248, 254-255 (1936). The Third Circuit has adhered to the standard that petitioner must "demonstrate a 'clear case of hardship or inequity' if there is even a 'fair possibility' that the stay would work damage on another party." *Id.* at 1076 (citing *Landis,* 299 U.S. at 255).

Plaintiffs have themselves admitted that it is not likely that much pretrial discovery will take place between the date of this order and the issuance of the Panel's order on defendants' motion for consolidation. In spite of this admission, plaintiffs have asserted that a temporary stay will constitute a prejudicial delay.

The Court finds that even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay. Section 1407 of 28 U.S.C. exists for the express purpose of coordination of pretrial proceedings. *See* 28 U.S.C. § 1407. The actions before this Court are two of ten actions currently pending in United States District Courts for the District of New Jersey, Southern District of New York, and District of Delaware. The Court notes that the parties and issues of fact are common in all of the actions and that if separate discovery were to go forward, much work would be duplicated.

Plaintiffs argue that Rule 18 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation precludes the grant of a stay. Rule 18 provides as follows:

The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

R.P. Jud. Panel Multidist. Lit. 18. Plaintiffs assert that the Rule mandates that the district court retain jurisdiction of pretrial proceedings during the pendency of a transfer motion before the Panel. The Court finds, however, that Rule 18 of Procedure merely allows a transferee court to retain jurisdiction over pretrial proceedings during the pendency of a motion before the Panel if it judges it fair to all of the parties involved to do so. For the reasons cited above, the Court does not find that the balance of hardship weighs in favor of plaintiffs.

\*2 Plaintiffs also argue that there is a good chance that the parties will coordinate pretrial discovery. This is outside of the Court's calculation. The Court is to examine the likelihood of duplicative discovery in the event that the parties are free to engage in any discovery practices.

For these reasons, the Court will stay its participation in this litigation.

An appropriate order is attached.

### ORDER

For the reasons expressed in the Court's Opinion filed herewith,

It is on this 1st day of February, 1991,

ORDERED that defendant's motion to stay this action pending resolution of defendant's motion for consolidation is granted; and it is further

ORDERED that the parties shall immediately inform the Court of the Multi-District Litigation Panel's decision and the stay shall be lifted.

D.N.J.,1991.
Arthur-Magna, Inc. v. Del-Val Financial Corp.
Not Reported in F.Supp., 1991 WL 13725 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT
# 14

Westlaw.

Not Reported in F.Supp.                                                     Page 1
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
(Cite as: Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.))

**H**

In re Asbestos Products Liability Litigation (No. VI)

E.D.Pa.,1996.

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

In re ASBESTOS PRODUCTS LIABILITY LITIG-ATION (NO. VI).

This Document Relates To Plaintiffs' Motion For Suggestion Of Remand Of All MDL Cases filed by the Law Firm of Robles & Gonzalez, P.A. (the mo-tion relates to approximately 2,700 cases filed in 47 jurisdictions by the law firm of Robles & Gonzalez, P.A.)

Civ. A. No. MDL 875.

Sept. 16, 1996.

Francis E. McGovern, Tuscaloosa, AL, Special Master.

Stephen B. Burbank, Philadelphia, Special Master.

A. Wendel Stout, III, Deutsch, Kerrigan & Stiles, New Orleans, LA, Karl M. Koons, III, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for movant Center for Claims Resolution.

*MEMORANDUM OPINION AND ORDER*

WEINER, District Judge.

*1 On June 28, 1996, Plaintiffs' counsel, Robles & Gonzalez, P.A., of Miami, Florida, filed Plaintiff's Motion For Suggestion Of Remand Of All MDL 875 Cases [FN1]. At the same time, a similar motion for remand was filed with the Judicial Panel For Multidistrict Litigation. On July 10, 1996, this Court issued a Show Cause Order relating to the motion for suggestion of remand and scheduling a hearing on the matter for August 22, 1996 follow-ing briefing. The motion before the Judicial Panel is scheduled for hearing on September 20, 1996. This Court's hearing was held on August 22 and at-tended by Juan Bauta, Esq., for the plaintiffs from the law firm of Robles & Gonzalez, P.A., and by several defense counsel. The Court has also re-ceived and reviewed numerous briefs.

FN1. The title of the motion was confusing in that plaintiff was referred to in the sin-gular, yet it purported to address *ALL* of the MDL 875 cases. Further reading of the motion reveals that the request is by the law firm of Robles & Gonzalez, P.A., and seeks a suggestion of remand as to only those cases filed in federal court by the Robles firm and transferred to MDL 875. The attachments provided indicate approx-imately 2700 cases in 47 venues.

BACKGROUND

On July 29, 1991, the Judicial Panel For Mul-tidistrict Litigation issued an order transferring all pending asbestos-related, personal injury lawsuits to the Eastern District of Pennsylvania for pre-trial management by this Court. This promulgating order for MDL 875 further provided a mechanism for the transfer of future tag-along cases. As of this date, approximately 62,000 cases had been assigned to MDL 875 and, approximately 40,000 cases had been closed [FN2]. The remaining 22,000 include thousands of claims which are resolved but not yet dismissed and removed statistically [FN3]. This Court instituted procedures shortly after the MDL assignment which created methods and procedures which led to block settlements. Plaintiff and de-fendant steering committees were appointed, test areas were sampled and the sealed data was ex-amined by experts chosen by the attorneys. There-after, the parties, by utilizing the same methods, de-veloped a model which resolved the cases in the New England area. This became the vehicle that was used by all the parties. For the most part, the attorneys were able to achieve settlement of present cases which incorporated a method for handling fu-ture cases as claims. The defendants would waive the statute of limitations and plaintiffs would pro-cess the cases by providing medical and exposure data. This settlement process is now in use in every

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 2
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.))**

jurisdiction across the country and almost every plaintiffs attorney has an agreement with one or more of the defendants.

> FN2. Assignment to MDL 875 includes ED of PA cases which do not need to be transferred. Closure includes approximately 750 cases returned for trial or completion of settlement procedures. As a practical matter, these actions are seldom returned until all but one or two defendants remain, and then, they routinely settle in total without trial. Of the very few trials which have actually occurred following transfer, a number have resulted in defense verdicts.

> FN3. Many of the plaintiffs' counsel, and certainly most of the defendants, are engaged in thousands of cases. When settlement occurs, medical and exposure details may still need to be provided, releases must be signed, and frequently, the payout period may extend for several years. The last matter tended to by counsel is usually the submission of a dismissal order. As a result, the Court often finds that cases which remain on the dockets with seemingly large numbers of remaining defendants are either settled completely or have only one or two actual claims remaining.

During the early months of the MDL process, this Court outlined to all of the parties that the Court would continue to focus on certain priorities. These priorities have guided much of the Court's activity. Because transaction costs have been so high in this litigation, the Court desired to reduce these costs, allowing more funds to be available for payment to those who were sick or injured. Without staying discovery, the Court has caused the parties to substantially reduce costly discovery expenses by avoiding repetitive proceedings. By encouraging case settlement in the manner of a claim, expensive fees and additional costs have also been avoided or curtailed. The Court's concern over the continued

viability of the defendants, particularly with an unknown quantity of future injuries brought about due to the latency of asbestos-related diseases. The loss of any defendant to bankruptcy [FN4] shifts a greater burden to the remaining defendants. One defendant sought bankruptcy protection shortly after this Court received jurisdiction but there have been none since because the parties now process their claims through a time and cash flow schedule. Finally, the Court has prioritized malignancies and other serious disease cases. Only a very small percentage of the cases filed have serious asbestos-related afflictions, but they are prone to be lost in the shuffle with pleural and other non-malignancy cases. At the request of plaintiffs' steering committee, the Court implemented a procedure to move the serious cases forward. Because of this, there are now very few remaining malignancy actions.

> FN4. Approximately 15 defendants have previously filed for protection under the Bankruptcy Code, Manville Corp. being the most notable. Several of these companies had been major players in the litigation, such as Celotex, Eagle-Picher, Forty-Eight Insulation, UNR, Raymark, H.K. Porter and National Gypsum. Some of these companies have provided some funds for payment of continuing claims, but rarely does it approach even a small percentage of their former share in the litigation. The Court has been in touch with the bankruptcy courts in regard to their progress.

**\*2** This Court's processing of MDL 875 has resulted in the removal of 7-8,000 cases per year from the federal court dockets, while at the same time, these courts have been freed of the morass caused by the mass of asbestos case filings and able to transact other important court business. For the first time, the case resolution numbers are exceeding new filings. Additionally, the Court has been able to encourage, as well as participate in cooperation with the state courts, the parties to settle state cases as part of their settlement packaging in the federal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
(Cite as: Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.))

court. This has had a positive impact upon the state court calendars as well.

## PRESENT ACTION

Plaintiffs' counsel filed the present motion setting forth their desire to have approximately 2,700 cases remanded to 47 federal districts. In their motion, plaintiffs state that they have had "no movement whatsoever" for over three and one half years, and that, in light of the order issued on May 10, 1996, by the Third Circuit Court of Appeals in *Georgine v. Amchem Products, Inc.,* (3rd Cir.1996) (full cite omitted) [FN5], the cases should be remanded at this time. Counsel further indicates that he does not anticipate settlement under the MDL process and *all* of his negotiations are at an impasse [FN6].

> FN5. The *Georgine* case, filed before this Court in 1993 (USDC, ED-PA, C.A. No. 93-00215), involved a settlement class action between two of the larger plaintiffs' asbestos law firms and the Center for Claims Resolution, a settlement consortium of twenty of the asbestos defendants. The plaintiff achieved settlement of their present inventory of cases through the class settlement and had negotiated an agreement to handle future claims in behalf of the class as claims, utilizing exposure and medical criteria. While the Third Circuit rejected this as a class action, the Sixth Circuit was affirming a similar action involving Fibreboard, Inc. as the defendant in the case of *Ahearn v. Fibreboard, Corp.*

> FN6. Plaintiffs' motion was accompanied by an affidavit executed by Louis S. Robles, Esq. setting forth many of these statements. A similar affidavit executed by Stuart D. Fried, Esq. was attached to the motion before the Panel. Oddly enough, neither Mr. Robles nor Mr. Fried appeared before this Court for the hearing on the

motion, nor did they request a continuance.

This Court is familiar with the undertakings of the Court and with counsel who have appeared before it. Early in this process, plaintiffs' counsel (Mr. Robles) did have an opportunity to seek this Court's assistance in a settlement with Owens Corning (one of the major defendants). Since that successful intervention by the Court, there have been few contacts made by plaintiffs' firm to the Court. Nonetheless, the Court has continued to encourage several of the defendants to work out settlements with the Robles & Gonzalez firm. In many instances, this has led to successful negotiations.

At the hearing, Mr. Bauta stated that his firm has in fact settled with some of the non-major defendants and that they have a long-term relationship with these settling parties. The Court is aware that a continuum of settlement orders have been filed in the Robles & Gonzalez cases whereby settlement has been achieved with defendants Foster Wheeler, Babcock & Wilcox, U.S. Mineral, Garlock, Crown Cork & Seal, Flintkote and Combustion Engineering.

Plaintiffs have settled with many of the defendants in the litigation considered to be majors [FN7] as well. The Court is unsure of the numbers, but knows that many settlements have passed through with Fibreboard as the settling party.

> FN7. The major defendants are generally those which pay higher dollars in a vast multitude of jurisdictions and cases. They include Center for Claims Resolution, Owens Corning, Owens-Illinois, Pittsburgh Corning and Fibreboard Corporation. Johns-Manville Corporation was the first of the majors, but bankruptcy has substantially lessened its role in the litigation.

Mr. Bauta also provided that his firm has settled more than 2,100 cases with Center for Claims Resolution which is a major defendant in the litigation representing a group of twenty manufacturers and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.))**

Page 4

suppliers. Although Mr. Bauta represented that his firm had only settled 496 cases with Owens-Illinois, counsel for Owens-Illinois submitted that their company had resolved 2,849 state and federal cases, of which more than 1,460 were federal actions in the MDL. Owens-Illinois' counsel further pointed out that more than 65% of these cases were dismissed without prejudice as to Owens-Illinois because they were pleural only [FN8]. Counsel for Owens-Illinois further advised the Court that, but for the MDL, these settlements would not have occurred.

> FN8. Pleural disease is most often an asymptomatic scarring of the pleura-a tissue thin membrane surrounding the lung. Many states, including Pennsylvania, do not allow for a cause of action based upon this condition alone if it is asymptomatic. It can only be discovered through x-ray and, in and of itself, does not pose a health risk or impairment.

**\*3** Upon reviewing the motion and affidavits of plaintiffs' counsel, and after hearing the testimony and arguments presented to the Court, this Court is of the belief that the actual facts fail to give much support to the position of the plaintiffs. In fact, plaintiffs have made great strides toward settlement of their cases, including their non-serious claims, and this has been as a result of the efforts of the MDL. It is interesting to note that few plaintiffs' counsel have joined in this motion. All counsel who have cooperated with each other and have diligently pursued their cases and claims, and have sought the aid of the Court, have achieved a successful conclusion for their clients. We commend all counsel who have been cooperative with each other and the Court, and we urge others to continue to follow this same path so that we can continue to resolve the remaining cases without additional and needless expenditure of either time or money.

*ORDER*

For the reasons set forth in this Court's Memorandum Opinion this date, Plaintiffs' Motion For Suggestion Of Remand Of All MDL 875 Cases filed by the law firm of Robles & Gonzalez, P.A., on June 28, 1996, IS DENIED.

E.D.Pa.,1996.
In re Asbestos Products Liability Litigation (No. VI)
Not Reported in F.Supp., 1996 WL 539589 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT
# 15

Not Reported in F.Supp.                                                                  Page 1
Not Reported in F.Supp., 1992 WL 102762 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp., 1992 WL 102762 (E.D.Pa.))**

C
American Seafood, Inc. v. Magnolia Processing, Inc.
E.D.Pa.,1992.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
AMERICAN SEAFOOD, INC.
v.
MAGNOLIA PROCESSING., INC., et al.
LEVY WORLD LIMITED PARTNERSHIP
v.
MAGNOLIA PROCESSING, INC., et al.
**Civ. A. Nos. 92-1030, 92-1086.**

May 7, 1992.

Frank D'Amico, Jr., New Orleans, La., Warren Rubin, Gross & Metzger, P.C., Philadelphia, Pa., for American Seafood, Inc.
Fred C. De Long, Jr., Campbell, De Long, Hagwood & Wade, Greenville, Miss., for Magnolia Processing, Inc.
Charles J. Bloom, Kleinbard, Bell & Brecker, Philadelphia, Pa., Robert Fleishman, Washington, D.C., for Delta Pride Catfish, Inc.
Carl W. Hittinger, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., John F. Beukema, Faegre & Benson, Minneapolis, Minn., for Farm Fresh Catfish Company.
George E. Rahn, Jr., Piper & Marbury, Philadelphia, Pa., William F. Hargens, McGrath, North, Mallin & Kratz, P.C., Omaha, Neb., for Country Skillet Catfish Company, Inc.
Steven J. Greenfogel, Meredith & Cohen, Philadelphia, Pa., Michael J. Freed, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., Krishna B. Narine, Meredith & Cohen, P.C., Warren Rubin, Gross & Metzger, P.C., Philadelphia, Pa., for Levy World Limited Partnership.
Douglas Evan Ress, Kaufman, Coren & Ress, Philadelphia, Pa., Frank W. Trapp, Jackson, Miss., for Simmons Farm Raised Catfish, Inc.

*MEMORANDUM AND ORDER*

HUTTON, District Judge.
**\*1** Presently before the Court are three pending motions for a stay of the proceedings in the above captioned matters. The first is the United States' Motion for Limited Intervention and for Stay of Discovery. The second is the motion of two defendants for a stay of all proceedings pending the completion of the criminal prosecutions in these matters. The third is a motion by one defendant for a stay of all proceedings in the above captioned matters until the Judicial Panel on Multidistrict Litigation [JPML] decides the pending motion to transfer. Responses have been filed to all of the above motions, and all are ripe for disposition. For the following reasons, the Court will grant the motion to stay pending the JPML decision and deny the United States motion and the motion to stay pending completion of the criminal prosecutions without prejudice and with leave to renew.

There are at least six pending civil actions in the federal district courts which concern the alleged antitrust violations of the defendant catfish producers. Four are pending in the Northern District of Mississippi and two are pending before this Court in the Eastern District of Pennsylvania. The criminal action is also pending in this district before this Court. One defendant has already pled guilty in the criminal action and has been sentenced. The grand jury investigation is still proceeding in this district. Similar motions have been filed in this Court and the Mississippi Court regarding possible class actions and a possible stay of all proceedings. The plaintiffs in the Mississippi actions have moved the JPML for consolidation of all of the cases and a transfer of all cases to the Northern District of Mississippi. The Pennsylvania plaintiffs have responded in opposition and have moved for a transfer of all civil actions to this Court. A hearing before the JPML has been scheduled on the motion for May 29, 1992. All of the parties in the Mississippi litigation have agreed to stay merit discovery pending the outcome of the JPML hearing.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 102762 (E.D.Pa.)
(Cite as: Not Reported in F.Supp., 1992 WL 102762 (E.D.Pa.))

Page 2

There are motions for class action certification pending in both of the above captioned cases. Responses to those motions are not due until May 15, 1992. Also pending are five recently filed motions to dismiss or transfer venue to the Northern District of Mississippi filed by four of the defendants. Pursuant to stipulation the defendants were permitted to respond to plaintiffs' discovery requests by April 30, 1992.

The power of a court to stay proceedings is within the discretion of the district court. The power derives from and is incidental to the power of every court to manage the cases on its docket to ensure a fair and efficient adjudication. *Gold v. Johns Manville Sales Corp.,* 723 F.2d 1068, 1077 (3d Cir.1983). The party seeking the stay must demonstrate a clear case of hardship or inequity if granting that stay would prejudice the non-moving party. *Id.* at 1076. The plaintiffs will not be substantially prejudiced by staying this action pending the decision of the JPML. The stay which the Court orders will only be in effect until the JPML issues its decision. Therefore, there will be no extended delay in the commencement of discovery.

**\*2** Moreover, any prejudice to the plaintiffs is clearly outweighed by the considerations of judicial economy and possible prejudice to the defendants. As of the date of this Memorandum, there are six pending motions which impact either substantive legal issues or the important procedural questions of class action certification. These issues should be addressed by the court to which all of the pending civil actions are assigned. In addition, there are the two related motions for stay filed by the United States and one of the defendants. These stay issues should also be addressed by the transferee court. If this Court were not to stay the proceedings in these two cases, the Court will have to consider the motions to dismiss and the motions for class action certification. This Court's rulings on those motions may conflict with the decisions of the Northern District of Mississippi which has in front of it similar motions. The result is that the defendants may

be forced to prosecute or defend similar motions twice and the decisions of this Court and the Northern District may be in conflict. The duplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of the stay. *Arthur-Magna, Inc. v. Del-Val Financial Corp.,* 1991 WL 13725 (D.N.J.1991); *Portnoy v. Zenith Laboratories,* 1987 WL 10236 (D.D.C.1987).

This Court agrees with the plaintiffs that the Court is not required to stay proceedings simply because there is a motion pending before the JPML. *Rule 18 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.* This Court agrees with the court in *Arthur-Magna* which held that Rule 18 allows the court to proceed with the case but does not require the court to do so, if the court determines that a stay is in the interest of fairness. This Court has determined that a stay pending the disposition of the JPML motion is appropriate under the circumstances. The JPML Rules or enabling statute are not in conflict with the decision to stay.

The Court is denying the motions for stay pending the outcome of the criminal proceedings at this time, because that issue is more appropriate for the transferee court. Therefore, the case of *Weil v. Markowitz,* 824 F.2d 166 (D.C.Cir.1987), which is cited by the plaintiffs is inapposite. Another case cited by the plaintiffs, *Hachette Distribution, Inc. v. Hudson County News Co.,* 136 F.R.D. 356, 358 (S.D.N.Y.1991), states that a stay of discovery should be considered on a case by case basis. The Court further notes that the district court has the inherent power to stay discovery pending dispositive motions or preliminary questions of jurisdiction. *Id.* It must be noted that in the *Hachette* case, the court considered the fact that not all of the defendants were moving for a stay to be extremely relevant. All defendants in this case have moved for a stay of the proceedings. The stay granted by this Order is temporary and warranted in light of the substantial prejudice to the defendants and considerations of judicial economy. Duplicative motion practice and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 102762 (E.D.Pa.)
(Cite as: Not Reported in F.Supp., 1992 WL 102762 (E.D.Pa.))

Page 3

discovery heavily outweigh the possible prejudice the short period of time that the proceedings are stayed will cause the plaintiffs. Discovery on class certification and JPML issues will be allowed to proceed. An appropriate Order follows.

*ORDER*

*3 AND NOW, this 6th day of May, 1992, upon consideration of:

1. The Motion of the United States For Limited Intervention Under Rule 24 and For Stay of Discovery under Rule 26(c), the responses of the Plaintiffs in Opposition, and the Memoranda of the Defendant's in Support;

2. The Motion of Defendants, Fishland, Inc. and Delta Pride Catfish, Inc., for a Stay of All Proceedings, the response of the Plaintiffs, and the Defendants' Reply; and

3. The Motion of Defendant Country Skillet Catfish Company, Inc. for an Order Staying Further Proceedings Pending A Ruling by the Judicial Panel on Multidistrict Litigation, the response of the Plaintiffs and the Defendant's Reply,

IT IS HEREBY ORDERED that:

1. The Motion of the United States For Limited Intervention Under Rule 24 is DENIED without prejudice and with leave to renew;

2. The Motion of the United States For Stay of Discovery under Rule 26(c) is DENIED without prejudice and with leave to renew;

3. The Motion of Defendants, Fishland, Inc. and Delta Pride Catfish, Inc., for a Stay of All Proceedings is DENIED without prejudice and with leave to renew;

4. The Motion of Defendant Country Skillet Catfish Company, Inc. for an Order Staying Further Proceedings Pending A Ruling by the Judicial Panel on Multidistrict Litigation is GRANTED; and

5. All proceedings and discovery except for discovery pertaining to class certification or JPML issues in the above captioned matter are stayed pending the decision of the Judicial Panel on Multidistrict Litigation or a further Order of this Court.

E.D.Pa.,1992.
American Seafood, Inc. v. Magnolia Processing, Inc.
Not Reported in F.Supp., 1992 WL 102762 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.